THE PEOPLES BANK, Appellant, v. PETER W. STEWART, Respondent.

Springfield Court of Appeals, January 3, 1911.

1. GUARANTY: Direct Promise to Pay: Offer ·to Guarantee: Notice of Acceptance. Defendant sent a written order to plaintiff bank to "cash checks for Roley & Co., till next week. Will see it paid." Upon the strength of this and similar orders plaintiff allowed Roley & Co., to overdraw their account. *Held,* that the above order amounted to a direct and original obligation to pay and was not a mere offer of guaranty and therefore no notice of acceptance of the order was required.

2. ———: Offer to Guarantee: Notice of Acceptance. An order given by one person on a bank to cash the checks of a third party and that the said person would guarantee the payment of them, amounts simply to a proposal of guaranty and requires notice of acceptance of the order.

3. ———: Prior Arrangement: Notice of Acceptance. Where defendant makes arrangements with a bank whereby the bank is to extend credit to a third party on· defendant's order, and subsequently such orders were presented from time to time, and on such orders the third party was permitted to overdraw, it is not necessary in order to hold defendant on his orders to show a notice of acceptance of such orders.

Bank v. Stewart.

4. ————: Acceptance of Prior Orders: Notice of Acceptance. Where defendant draws an order on a bank to cash the checks of a third party, and this order is accepted and defendant is told that "it is just as good as gold" and subsequently defendant gives other similar orders on the bank, *held*, that in drawing the last orders defendant must have known that the former ones had been accepted for he would not have been called upon for other orders if the former ones had been rejected, and under such evidence the jury is authorized to find that the defendant knew the bank had accepted his prior orders.

5. ————: Direct Promise to Pay: Notice of Default. Where an undertaking is an absolute and complete promise to pay the debt of another and not a mere offer or proposal to guarantee the payment, then the promissor is not entitled to notice of any default but is primarily liable.

6. ————: ————: Taking Notes Not Construed as Payment of Original Debt. When defendant draws an order on a bank to permit a third party to cash checks, which order amounts to a primary promise to pay, it is immaterial that the bank afterwards took demand notes from the third party.

7. PLEADING: Payment. In a suit against the defendant to recover for the overdrafts of a third party which the defendant had promised to pay, the answer pleaded payment; this plea, however was held only sufficient to admit evidence of payment in money and was not sufficient to show that notes were taken in payment of the overdraft.

8. PAYMENT: Bills and Notes. In order that the taking of a note shall operate as payment of the prior indebtedness there must be an express agreement to that effect.

9. BANKS AND BANKING: Guaranty: Checks Issued for Special Purpose: Notice. Plaintiff bank honored the overdraft of a third party upon defendant's order and agreement to pay, and the defendant afterwards gave the third party checks on the bank, which the bank paid. The defendant contended that the bank should have applied the checks to the payment of the overdraft. *Held*, that there was no evidence that the bank knew that the checks were issued for this special purpose and that the payment by the bank did not relieve the defendant of any liability on the overdraft.

Appeal from Dade Circuit Court.—*Hon. B. G. Thurman,* Judge.

REVERSED AND REMANDED.

*Neale & Newman* and *McPherson & Hilpirt* for appellant.

(1) The court admitted evidence tending to show that after the giving of orders sued on and after the payment by plaintiff of the checks drawn by the partnership of Roley & Co. on account of said orders, that Roley & Co. made deposits in the plaintiff bank in amounts greater than the moneys paid out by plaintiff on Roley & Co.'s checks. This testimony was received by the learned trial judge and at the close of all the testimony he refused to strike out this testimony on the theory that if such deposits were made plaintiff was bound to appropriate the deposits of Roley & Co., if any were made to the payment of itself for having cashed the said checks. This was error. Bank v. Booze, 75 Mo. App. 189; Bank v. Carson, 32 Mo. 191; Bank v. Peck, 127 Mass. 298; Camp v. Bank, 44 Fla. 497; Bank v. Hill, 76 Ind. 223; Bank v. Elliott, 9 Kan. 797, 59 Pac. 1102; Bank v. Evans, 9 W. Va. 373; Vass v. Bank, 83 Ill. 599; Houston v. Braden, 37 S. W. 467; Bank v. Smith, 66 N. Y. 271; Glazier v. Douglas, 32 Conn. 393; Flourney v. Bank, 79 Ga. 810. (2) There was no evidence introduced tending to show the plaintiff did confiscate any of the deposits of Roley & Co., and this instruction should have been given. Bank v. Carson, 32 Mo. 191; Bank v. Peck, 127 Mass. 298; Bank v. Hill, 76 Ind. 223; Bank v. Smith, 66 N. Y. 271. (3) The court erred in refusing plaintiff's instructions Nos. 8, 9, 10, and 11. Newton Grain Co. v. Pierce, 106 Mo. App. 200; Gill v. Reed, 55 Mo. App. 246; Nelson Mfg. Co. v. Shreve, 94 Mo. App. 518; Globe Printing Co. v. Bickley, 73 Mo. App. 499; Pearsell Mfg. Co. v. Jeffrays, 183 Mo. 386; Rottman v. Pohlman, 28 Mo. App. 399; Kansas City Sewer Pipe Co. v. Smith, 36 Mo. App. 608; Brant on Suretyship and Guaranty, sec. 56; Baldwin v. Heirs, 73 Ga. 739; Cruse v. Estes & Foster, 76 Ga. 723; Mackey v. Smith, 28 Pac. 974.

*McNatt & McNatt* for respondent.

(1) There was no unconditional acceptance of the contract as shown by all the evidence in the case, and before there can be a recovery on an order as this one, there must be an unconditional acceptance, and the parties must understand and consent to the same thing in the same sense. James & Son v. Fruit Jar Co., 69 Mo. App. 207; Brunner v. Wheaton, 46 Mo. 363; Shockley v. Fisher, 75 Mo. 498; Denton v. McGinnis, 85 Mo. App. 542; Robonson v. Railroad, 75 Mo. 498. (2) The petition alleged that defendant had knowledge of the acceptance of the orders and the amount of money paid out on same, which was necessary to prove before a recovery can be had yet there is no evidence in the record of such facts. Banm v. Golstein, 86 Mo. App. 516; Deering Co. v. Susler, 78 Mo. 670; Taylor v. Shouse, 73 Mo. 361; Bank v. Shine, 48 Mo. 456; Smith v. Anthony, 5 Mo. 504; Deere Plow Co. v. McCullah, 102 Mo. App. 458; Peninsular Stove Co. v. Adams, 93 Mo. App. 237; Bank v. Golberg, 15 L. R. A. (N. S.) 1115; Rowell Mfg. Co. v. Isaacs, 128 S. W. 760; Barnes Cycle Co. v. Reed, 84 Fed. Rep. 603; Taussig v. Reid, 145 Ill. 488; Rankin v. Childs, 9 Mo. 674; Nelson Mfg. Co. v. Shreve, 94 Mo. App. 518. (3) The obligation of the defendant was collateral and notice of acceptance was necessary, as well as notice of the amount of money paid to Roley & Co. Musick v. Musick, 7 Mo. 495; Graig v. Seybt, 91 Mo. App. 242; King v. Greeves, 51 Mo. App. 534. (4) The plaintiff by its pleadings regarded the obligation of the defendant under the alleged orders as collateral to the debt of Roley & Co., and the instructions should follow the allegations of the petition, which was done by those given in this case. Flint-Walling Mfg. Co. v. Ball, 43 Mo. App. 504; Raysdon v. Trumbo, 52 Mo. 35; Caffary v. Coal & Mining Co., 95 Mo. App. 174; Wright v. Fonda & Higgins, 44 Mo. App. 634; Moore v. Rose, 130 Mo. App. 668.

GRAY, J.—On the 5th day of December, 1910, an opinion was filed herein reversing the judgment and remanding the cause for a new trial. The appellant filed a motion to modify the opinion, and the respondent motions for rehearing and to transfer to the Supreme Court. The motions for rehearing and to transfer have been overruled. The motion to modify has been sustained, and the original opinion is withdrawn and the following filed in lieu thereof.

This suit originated in the circuit court of Lawrence county, and on a trial in that county a judgment was rendered in favor of the defendant. The plaintiff appealed, and the judgment was reversed by the St. Louis Court of Appeals. [136 Mo. App. 24, 117 S. W. 99.]

When the cause was remanded, an amended petition and answer were filed, thereby changing the issues in the case so that the former opinion throws but little light on the present controversy. Before the cause was retried, the plaintiff applied for and obtained a change of venue and the cause was sent to the Dade county circuit court, and there tried, before a jury, resulting in another judgment in favor of the defendant, and the plaintiff appealed.

The plaintiff, at the times hereinafter mentioned, was a banking corporation in Aurora, Lawrence county, and the defendant was the owner of a tract of land, upon which a partnership known as Roley & Company was mining for lead and zinc ores. The arrangement between the defendant and the partnership was, that the latter should conduct the mining operations, pay all the expenses, and when the ore was cleaned and ready for market, it was to be sold in the name of the defendant, who was to receive the pay therefor. The company was entitled to a certain per cent of the proceeds of the ore in payment for mining the same and preparing it for market. When the ore check was given to the defendant, he deducted the amount due

him as the owner of the land, and wrote a check payable to the company for the amount due it.

About the time Roley & Company got the mine in shape to operate, its funds were exhausted and the defendant went to the plaintiff and borrowed one thousand dollars and deposited it to the account of Roley & Company, so the company could meet expenses and finish the mining plant, and be able to begin operations.

The testimony shows that it was customary to pay the laborers in the mine on Saturday, but the ore produced during the week was not sold and delivered so that a settlement could be made until the first of the week, and sometimes the ore was not sold weekly, and further delays in receiving pay for the ore were caused thereby. The company was without funds in the bank to meet its weekly payrolls, and applied to the plaintiff bank for credit, and asked the bank to permit it to overdraw its account by writing checks on the bank in excess of the funds on deposit. The bank refused the credit, for the reason it did not deem the copartnership good for the money advanced.

The plaintiff claims that shortly after its refusal to extend credit to the company, the defendant called at the bank and an agreement was entered into by which the bank agreed if the defendant would send orders to cash the checks of the copartnership. In a short time an order was presented to the bank, the plaintiff claims, reading as follows: "Aurora, Mo. Peoples Bank Cash checks for Roley & Co. till next week will see it Pade. P. W. Stewart." It is the contention of plaintiff that the order was accepted, and that the copartnership was permitted to overdraw its account; that soon after another order was presented, and this practice continued from some time in 1905, until the 14th day of July, 1906.

Roley & Company deposited in the bank until January 6, 1906, sufficient funds to square its account so that no liability accrued on the orders of the defend-

ant given prior to that time. Previous to January 6, 1906, when an order was presented, the bank put it in the cash drawer and honored the checks of the copartnership, regardless whether it had any funds on deposit to meet them. And when the copartnership received a check for ore, the same was deposited to the copartnership account and was sufficient not only to take up all outstanding checks, but to show a balance in favor of the copartnership. When the order of January 6th was presented, the cashier of the plaintiff requested the copartnership to give a demand note for the amount the proposed checks would overdraw the account. The evidence shows that the bank remained open Saturday evenings after the usual closing hour, but the Saturday evening's business was transacted as a part of the business of the following Monday. When the business of Monday was finished and it was ascertained the amount the copartnership had overdrawn its account, a demand note was given for the amount.

The plaintiff claims that on January 6th, January 27th, March 13th and July 14th, 1906, on orders of the defendant, it paid to the copartnership nine hundred and forty dollars.

The petition is in four counts, but as the counts are the same except as to dates and amounts, it will not be necessary to refer to more than one of them. The first count, after alleging the organization of the plaintiff and that Roley & Company was a mining partnership, states: "On or about the 6th day of January, 1906, the defendant, by his written order of that date, duly executed by him and delivered to the plaintiff, ordered and requested the plaintiff to then and there cash checks of Roley & Company in such sum as the said Roley & Company might draw on plaintiff; that on or about the said date, the said Roley & Company drew checks upon the plaintiff bank in the sum of three hundred dollars, and the plaintiff paid the same solely on account of the said order of defendant, which said or-

der it accepted; that the defendant had knowledge of the acceptance by plaintiff of the said order, and of its payment of said checks, and that it did so relying solely on his credit; that no portion of the sum so paid on the defendant's order has been paid to plaintiff by defendant, or by the said partnership, but the whole remained due and unpaid after demand.''

In the first, second and third counts of the petition it is alleged that the orders given were lost, so that the same could not be filed; but with the fourth count there was filed an order reading as follows: ''Aurora, Mo., July 14th, 1906. Peoples Bank Cash checks for Roley & Co. till next week will see it Pade. P. W. Stewart.''

The answer admitted the signing of the order described in the fourth count, but denied the execution of the others; further denied plaintiff accepted any of the orders; that plaintiff ever gave the defendant any notice of the acceptance of the orders, or of any notice of the failure of Roley & Company to repay. The answer further alleged: ''That the orders alleged to have been executed by the defendant and upon which the plaintiff alleges it advanced the money to the said Roley & Co., only requested the plaintiff to permit the said Roley & Co. to overdraw and check at the plaintiff bank for the particular week to meet the payroll of the said Roley & Company, and that the plaintiff refused to accept said order or permit the said Roley & Company to draw and check at the plaintiff's bank to meet the payroll, and that plaintiff refused to accept the conditions of said order or to comply with the request therein made; that if plaintiff ever advanced any money to Roley & Company on the said orders, that said money had been repaid, and if the plaintiff did permit Roley & Company to check against their account and overdraw the same, as alleged in the petition, the said Roley & Company had long since paid the same by the depositing of large sums of money in the plaintiff

bank, and greatly in excess of the amounts advanced.''
The reply was a general denial.

The plaintiff offered testimony tending to prove
that credit was refused the copartnership, and that im-
mediately thereafter the defendant appeared at the
bank, and the bank agreed with him to cash checks of
the copartnership upon his order; that orders were pre-
sented from time to time and on the faith of the orders
plaintiff permitted the copartnership to overdraw its
account; that all the orders described in the petition
were substantially in the form of the one set out in the
fourth count. The plaintiff also offered testimony tend-
ing to prove that after the first order was written and
accepted, one of the copartners told the defendant his
order was accepted, and that the bank official had
stated, ''It was as good as gold.''

The plaintiff also offered testimony to the effect
that after the first two or three orders had been cashed,
the defendant appeared at the bank and made inquiry
if the copartnership had deposited funds to cover the
overdrawn account, and was informed that the account
had been paid.  The defendant denied that he ever
wrote more than one order, and that for about seventy-
five dollars, but admitted on cross-examination that he
executed the order set forth in the fourth count of the
petition.  The plaintiff's claim, that about a dozen
orders were executed by the defendant, was corrobo-
rated by the surrounding circumstances, and by the
members of the copartnership who had charge of its
finances.

The plaintiff contends that the orders executed by
the defendant were primary obligations or absolute
guaranties, and that no notice of their acceptance was
required.  The defendant claims, the order constituted
a mere offer of guaranty requiring notice of acceptance
by the bank to bind the defendant.

The Supreme Court of Iowa in German Savings
Bank v. Drake Roofing Co., 79 N. W. 121, declares:

"The authorities relating to this question are in hopeless conflict, and, although some of the rules are fairly well settled, there is a want of harmony in the decisions applying them to special circumstances." And the Kansas City Court of Appeals, in Kansas City Sewer Pipe Co. v. Smith, 36 Mo. App. 608, declares: "It would of course be vain to attempt to classify, or to harmonize, the multitude of conflicting cases to be found in the reports."

So far as the order described in the fourth count is concerned, its contents are not disputed, because the original was produced and its execution admitted. The plaintiff claims the other orders were substantially in the same form. But on cross-examination of the plaintiff's cashier, he admitted that on a former trial he had testified that the bank carried the orders as collateral to the promise of the copartnership. At the last trial, the president of the bank was asked to state the contents of the orders, and he answered as follows: "Well, I don't know as I could repeat it word for word, but it was an order such as an ordinary farmer, or man of that kind, would write; to let Roley & Co.—that he would guarantee Roley & Co's payroll, or something to that effect." And he was shown the order described in the fourth count and asked if the language of the others were similar to that and he replied they were; but he would not say they were exactly the same, but similar or the same in substance.

It will be seen that there is a dispute as to the exact terms of the orders, and on account thereof, the legal question to be determined becomes more difficult. If the plaintiff's contention, as to the form of the orders and the legal effect thereof, is correct, then the question of notice of the acceptance is out of the case. [Rankin & Rankin v. Childs, 9 Mo. 673; Kansas City Sewer Pipe Co. v. Smith, 36 Mo. App. 608; Globe Ptg. Co. v. Bickley, 73 Mo. App. 499; Parsons on Contracts, 13; Mitchell & Bro. v. Railton, 45 Mo. App. 273.]

In Smith v. Anthony, 5 Mo. 504, the alleged contract read: "Wm. Anthony-Dear Sir: Wm. Mitchell will probably call on you to purchase your horse, and should you conclude to sell, you can do so. Take his note, and I will be responsible for the payment on his return. Zenas Smith." Anthony sold Mitchell the horse and took his note therefor, but default was made in the payment of it, whereupon Anthony sued Smith. The court held that Smith's contract was only an offer of guaranty, and it was necessary for plaintiff to show that he gave notice of defendant's acceptance.

In Rankin and Rankin v. Childs, supra, a request was made by one McCourtney on the plaintiffs for a bill of goods to which was appended the following: "I hereby guarantee the payment of the above bill. Wm. Childs." The goods were furnished, the bill was not paid and suit was brought against Childs on his undertaking. The court held the undertaking was not a direct promise, but a mere guaranty. In the course of the opinion, the court used this significant language: "The plaintiff's attorney insists, that the terms used, 'I hereby guarantee the payment,' are equivalent to saying, 'I hereby promise to pay.' But we think there is a manifest difference in the force of the language used. The word 'guarantee,' is an undertaking to do an act, or perform a duty for another, in the event of his not performing. Whereas, the other is a direct, positive and unconditional promise to pay."

In Bank v. Goldstein, 86 Mo. App. 516, the plaintiff, a banking institution, was informed by one A. Goldstein that he would thereafter make application to it from time to time for the loan of sums of money he should need in his business. The bank was unwilling to make the requested loans, unless payment of the same was guaranteed, and before making any loans said Goldstein enclosed to defendant a certain written guaranty to the effect that the defendant in consideration of one dollar to him in hand paid, guaranteed to

plaintiff all sums of money to the extent of two thousand dollars that it should loan or advance to Goldstein between certain dates. The guaranty was signed by the defendant and delivered to Goldstein, who in turn, delivered it to the bank. Goldstein defaulted and suit was brought against the guarantor. The court held that the guaranty was but an offer, and until accepted and notice of acceptance given, there was no liability.

There are other cases in this state holding the same way. But in Sewing Machine Co. v. Jones, 61 Mo. 409, the defendant executed the following paper: "For value received, we hereby guarantee to the Davis Sewing Machine Company, the full performance of the foregoing contract on the part of C. H. Hershey, and the payment of said Hershey of all indebtedness which may arise under this contract." This guaranty was appended to a written contract between the Machine Company and Hershey, and delivered at the same time. The court said, in passing upon the nature of the instrument: "It has long been settled in this state, that a mere proposal to guarantee a contingent liability is not binding on the guarantor, unless he is notified of its acceptance. But it is also settled that where a party directly binds himself to be responsible for the fulfillment of another's contract already made, no such notice can be necessary. In fact, the delivery of the contract and the guaranty with it, is an acceptance. There was no question of notice or acceptance in this case."

In Kansas City Sewer Pipe Company v. Smith, 36 Mo. App. 608, one Thomson had a contract for certain public work in Kansas City, and the plaintiff furnished him sewer pipe for the purpose, and before the pipe was delivered, the agent of the plaintiff, with Thomson, called to see the defendant, and the agent of the plaintiff said to the defendant: "I understand Mr. Thomson has made arrangements with you about the payment of some pipe, on sewer district number 36," and to

which defendant responded: "Yes, Mr. Dickey, that is all right, Mr. Thomson has made arrangements with me that I will pay the bills for the materials delivered on sewer district 36 once a month." The court held that if the contract was as above stated, it constituted an original and not a collateral promise. Many cases are cited in the opinion in support of the proposition.

In Newton Grain Co. v. Pierce, 106 Mo. App. 200, 80 S. W. 268, the evidence showed that the plaintiff refused to sell one Dennis feed on his account, and in order to procure feed on credit, Dennis and the defendant went to plaintiff's place of business, and the defendant said to plaintiff's manager to let Dennis have feed and he would "stand good for it or pay for it." The court held it was an original undertaking.

In Globe Ptg. Co. v. Bickley, 73 Mo. App. 499, the paper read: "I hereby agree to become responsible to the Globe Printing Company of St. Louis, Missouri, for whatever amount may become due said Globe Printing Company for papers furnished to John Allen, in Mexico, Missouri, provided the amount is not settled by said John Allen according to the terms of the above agreement. S. W. Bickley." Allen defaulted in the payment of his account and suit was brought against the defendant on his guaranty. He defended on the ground that no notice of the acceptance of the guaranty was given to him. The court said: "The paper signed by appellant was not an offer or proposition to guarantee, but a declaration that he 'thereby agreed to become responsible.' It was a complete and absolute undertaking to become responsible for the value of the goods. No notice of the acceptance of this guaranty was necessary according to all the authorities, for the reason that the undertaking was absolute and complete."

While there are other authorities in this state, the above are sufficient to show what the rule is, so far

as our courts are concerned. If all the orders were in the same form as the one described in the fourth count of the petition, then they were direct and absolute obligations of the defendant, and not mere proposals of guaranty, and no notice of the acceptance of his guaranty was required. The above authorities all agree on this proposition. But there was testimony to the effect that some of the orders directed the plaintiff to cash the checks and defendant would guarantee the payment of them. Without anything more, such orders were simply proposals of guaranty, and required notice of their acceptance.

Again, the plaintiff's testimony tended to show that previous to the execution of any of the orders, the defendant applied to the bank in person and made the arrangements with the bank by which the latter agreed to advance the copartnership money on the defendant's orders. This was denied by the defendant, but if true, it was a complete agreement by which the bank agreed with the defendant to cash the checks on his order, and when the defendant delivered the orders, the contract was complete, and required no notice of acceptance. [Nelson Mfg. Co. v. Shreve, 94 Mo. App. 518, 68 S. W. 376; Cook v. Orne, 37 Ill. 186; Frost v. Standard Metal Co., 215 Ill. 240, 74 N. E. 139; Neagle v. Sprague, 63 Ill. App. 25; Lehigh Coal & I. Co. v. Scallen, 61 Minn. 63, 63 N. W. 245; Stewart v. Sharp County Bank, 71 Ark. 585, 76 S. W. 1064.]

If the defendant went to the bank and solicited it to advance money on his orders, and the bank agreed to do so, then when he executed an order, he knew that he had an agreement with the bank to accept the same, and no further notice to him was necessary, and therefore, if the jury found, under proper instructions, that the credit was extended under such arrangements, then the question of notice was out of the case. Cases above cited, and also Tolman & Co. v. Means, 52 Mo. App.

385, and Pearsell Mfg. Co. v. Jeffreys, 183 Mo. l. c. 394, 81 S. W. 901.

In addition to the above, the plaintiff offered testimony tending to prove that about twelve orders in all were given, and after the first order had been executed and delivered, the defendant asked if his order had been accepted, and he was notified that it had, and that the banker had said his order was "as good as gold." If the testimony of the plaintiff is true that about eleven orders were executed subsequently to the first one, and with the express knowledge that the first one had been accepted, the defendant executed the others, then he must have known when he executed the last four orders that the former ones had been accepted or he would not have been called upon for orders after former ones had been rejected.

The defendant further claims that no notice of the failure of Roley & Company to pay the sums advanced was ever given to him, and for that reason he is not liable. Without specially reviewing the authorities, if the undertaking was an absolute and complete one, and not an offer or proposal to guarantee, then he was not entitled to notice of any default, but is primarily liable. [Globe Ptg. Co. v. Bickley, 73 Mo. App. 499; Barker v. Scudder, 56 Mo. 272; Nelson Mfg. Co. v. Shreve, 94 Mo. App. 518, 68 S. W. 376. And other states recognize the same rule. [Heyman v. Dooley, 20 L. R. A. 257; Kline v. Raymond, 70 Ind. 271; Coburn v. Brooks, 78 Cal. 443; Furst & B. Mfg. Co. v. Black, 111 Ind. 308; Lent v. Padelford, 10 Mass. 230, 6 Am. Dec. 119.]

The court permitted the defendant to show that the bank took demand notes from Roley & Company for the amount of the sums advanced, and plaintiff claims that error was committed thereby. If the orders were in the form of the one described in the fourth count, then it may justly be said that it was immaterial that the plaintiff took demand notes from the

copartnership. But if the other orders were not in that form, but simply stated, as the testimony of the plaintiff's president tended to prove, that defendant "would guarantee Roley & Company's payroll," then it was proper for the defendant to show that the bank treated his guaranty as collateral to the obligation of Roley & Company, and took demand notes from that company, and held defendant's orders as security therefor.

The plaintiff urges the court erred in refusing its instructions Nos. 8, 9, 10 and 11. Each of the instructions refer to a different count in the petition, and therefore, it will only be necessary to notice one of them. No. 8 reads as follows: "The court instructs you that in this case that if you find and believe from the evidence that on or about the 6th day of January, 1906, the defendant P. W. Stewart gave a written order directed to the plaintiff by which he ordered and requested the said bank to cash checks for Roley & Co. till next week, saying he would see such checks paid, and that plaintiff bank did accept such order and did cash such checks drawn by said Roley & Co. and paid out the same the sum of three hundred dollars, relying upon the said order and trusting to the credit of the said defendant, then you are instructed that you will find for the plaintiff on the first count in its petition in whatever sums you may believe it paid out on such checks of said Roley & Company, with interest thereon at the rate of six per cent from such time as you may believe and find it demanded payment of the said sum."

The defendant is claiming that the demand notes of Roley & Company were given and accepted as absolute payment of the overdrafts, and that the instruction ignored this issue. It is sufficient to say that the answer of the defendant does not allege that the notes were taken in payment of the overdrafts. It is true the answer alleges that the orders were paid. This

plea, however, as stated by the Court of Appeals in the former opinion, was only sufficient to admit evidence of payment in money. And in so holding, the St. Louis court was only announcing the general rule. [Moore v. Renick, 95 Mo. App. 202, 68 S. W. 936.] Under the evidence we believe the plaintiff was entitled to the instruction, and the court erred in refusing to give it.

Not only was the answer insufficient to authorize the introduction of the testimony of payment by taking the demand notes, but there was no evidence that the bank expressly agreed that the demand notes should be accepted as payment of the orders. And in order that the taking of a note shall operate as payment of the prior indebtedness, there must be an express agreement to that effect. [Chorn v. Zollinger et al., 128 S. W. 213, and cases therein cited.]

At the request of the defendant, the court gave the following instruction: "The court instructs you that the orders sued on did not authorize the plaintiff to take demand notes from Roley & Company and place the amount thereof to their credit; and if you believe from the evidence that the plaintiff refused to allow said Roley & Company to check against their account until they executed to plaintiff their demand notes, or that after allowing them to check against their account, plaintiff then took demand notes for the amount of such over checks, and that defendant thereafter paid to Roley & Company his checks for mineral, intending thereby to cover the amounts checked out of plaintiff's bank on said orders, and that the said Roley & Company deposited such checks in plaintiff bank, which amount would have covered the amount checked out on said orders if same had been checked as directed and not covered by said demand notes, then your verdict should be for the defendant."

The instruction was erroneous and the giving of it substantial error. There was nothing in the orders

that prohibited plaintiff from taking demand notes from Roley & Company. The instruction was also wrong in telling the jury, if after the bank allowed Roley & Company to check against its account, the defendant thereafter paid to Roley & Company his checks for mineral, and intending thereby to cover the amounts checked out of plaintiff's bank. There was no testimony that the bank knew that checks given by defendant to Roley & Company were intended to be used for the special purpose of taking up the overdrafts. As heretofore stated, the copartnership was mining on defendant's land, and he gave his checks in payment for sums due the copartnership. But if there was any agreement between the bank and the defendant that the checks so given were to be used in taking up the overdrafts, the same does not appear in the record.

On another trial the jury should be told if the orders were in the form of the one described in the fourth count of the petition, no notice of the acceptance of the same or the default of Roley & Company was required, and if Roley & Company defaulted, the finding should be for the plaintiff. And although the jury should find that the other orders were offers of guaranty, but should further find that previous to the giving of same, the defendant went to the bank and made arrangements with the bank to accept his orders and permit Roley & Company to overdraw its account, and the bank agreed to this, and afterwards orders were given and accepted by the bank, and credit extended thereon, then no further notice of the acceptance was required to be given to the defendant. And even though the jury should find the defendant did not go to the bank and make the arrangements, but delivered the orders to a member of the firm of Roley & Company, and was informed by a member of said company shortly after the first order had been given, that the

bank had accepted the order and advanced money on it, and subsequently, from time to time, the defendant gave other orders on the bank, then such fact will be sufficient to authorize the jury to find the defendant knew the bank had accepted his orders. The court should inform the jury by proper instructions relating to the contention of the parties as to the form of the other orders, and should also inform the jury as to the legal effect of the orders in case they should be found to have been in certain language.

The judgment will be reversed and the cause remanded. All concur.