# HASSELL-HUGHES LUMBER CO. v. JACKSON
## et al.—232 S. W. (2d) 325.

At Jackson, March 23, 1949.

Petition for Certiorari denied by Supreme Court, October 3, 1949.

478

Canale, Glankler, Loch & Little, of Memphis, for appellants.

Beverly Bousche, of Memphis, for appellees.

SWEPSTON, J. This is an appeal by defendants from the decree of the Chancellor in a case tried regularly upon oral testimony according to a writted stipulation for same filed in the cause.

The suit is against Jackson and Strait trading as Strait-Jackson Products Company, on account for lumber purchased and delivered, and against Miller and Perry, trading as Milplan Crafts, on their alleged guaranty; Jackson died and the cause has been revived as to his administrator.

The contest is by Miller and Perry as to their liability on the guaranty which is in the form of a letter as follows:

"June 5, 1946

"Hassell & Hughes Lumber Co.,
"Collinwood, Tennessee
                    "Attention: Mr. Winford
"Gentlemen:
"This is to advise that we have today made arrangements with Strait-Jackson Products whereby we agree to act as their sales agents and have further agreed to take their entire production.
"At present they are manufacturing an unfinished dinette chair which from all indications is a very salable

item—in fact we have orders on hand for six carloads and feel quite sure that we can keep their plant on full time production for the remainder of this year on this particular item.

"Naturally we are very much interested in seeing that they are supplied with the necessary materials and we will see to it that any invoices from your firm for such materials that you may furnish them for these chairs will be taken care of promptly.

"Yours very truly,

"Milplan Crafts

. "S/ Reginald Perry

"T/ Reginald Perry—Mgr.

"RP  H               by Jackson"

The Chancellor found that this writing is to be construed as an absolute guaranty and that no notice of acceptance was necessary.

By two assignments of error appellants contend (1) that the letter was a mere offer or proposal of guaranty which was not accepted by notice and (2) that in any event it was a conditional guaranty of collectibility requiring notice of acceptance.

We find that Strait and Jackson were engaged in Memphis, Tennessee in the manufacture of unfinished dinette suites. Such manufacture required dry oak demension lumber, which at the time involved, was quite scarce and difficult of acquisition. Throughout the period from January 24, 1946 through April 11, 1946 the complainant had sold and delivered some five carloads of such oak stock to Strait-Jackson Products Company on a basis of prompt payment after receipt of invoices with two per cent discount allowed for cash within ten days. The record leaves no doubt that by April 11, 1946 Strait-

Jackson Products Company had become in serious financial difficulty; in fact, Strait testifies that at all times during the period involved in this case Strait-Jackson Products Company failed to remit payment for the car of oak dimension stock shipped on April 11, 1946 by complainant, and as a result, complainant refused to do further business with Strait-Jackson Products Company and to make further shipment. At the same time Strait-Jackson Products Company was having similar difficulty with other furnishers of items used in its chair manufacture.

By June of 1946 the situation was such that Strait-Jackson Products Company would be unable to continue in business unless new operating capital were furnished from some source. The defendants, Miller and Perry d/b/a Milplan Crafts, were interested in handling as manufacturers' sales agents marketing of the Strait-Jackson Company product. After negotiations between these two firms, Milplan Crafts loaned to Strait-Jackson Company the sum of $10,000 secured by mortgage upon its equipment, supplies, etc. It was understood that such funds would be and they were used to liquidate the outstanding indebtedness of Strait-Jackson Company so as to free its frozen sources of material. On June 6, 1946 Strait went to Collinswood, Tennessee, Wayne County, where the principal office of complainant was located, and delivered to complainant a check for the sum of $2400 to liquidate in full the past-due indebtedness of Strait-Jackson Company to complainant. At the same time Strait-Jackson delivered to complainant a letter of Milplan Crafts, dated June 5, 1946, and addressed to complainant, advising that Milplan Crafts had on that date made arrangements with Strait-Jackson

Products Company to act as their sales agents and to take the entire production of Strait-Jackson Company. Milplan Crafts expressed the view that the unfinished dinette chairs appeared to be a very salable item and stated that they had a substantial amount of orders for the product on hand at that time, sufficient to keep Strait-Jackson Company's plant on full-time production for the remainder of the year, 1946. The last paragraph of this letter (Exhibit "1" in the record) is as follows: "Naturally we are very much interested in seeing that they are supplied with the necessary materials and we will see to it that any invoices from your firm for such materials that you may furnish them for these chairs will be taken care of promptly." As stated, this letter was delivered to complainant on June 6, 1946, together with payment in full of the then existing indebtedness of Strait-Jackson Company.

Thereafter on June 26, July 10, July 22, September 10 and September 26, 1946, cars of dry oak dimension stock were delivered by complainant to Strait-Jackson Company for use in the manufacture of the dinette chairs; and remittances for such deliveries were promptly made. Further deliveries of cars were thereafter made on September 30 and October 24, 1946. Payment was not made for these deliveries in the customary manner. Telephone calls from complainant to Strait-Jackson Company followed in an effort to collect for these last two shipments, but payment was not forthcoming in spite of promises thereof. Finally, on January 23, 1947 a representative of complainant came to Memphis and did succeed in obtaining a payment by check in the sum of $1,000. This left a balance due on the two shipments last mentioned of $11623.68. It is testified by the rep-

resentative of complainant that he attempted to call on Miller and Perry of Milplan Crafts, went to their place of business, but failed to see either of them, due to their absence. By reason of promise of further payment at the time of receipt of the $1,000, complainant forebore action against Strait-Jackson Products Company for some time thereafter; but no further payments were received. Then on April 10, 1947 complainant, from Collinswood, Tennessee, wrote to Milplan Crafts (Exhibit "5") in connection with this balance of $1623.68 and referred to the Milplan Crafts letter of June 5, 1946. This letter of complainant called attention to the "assumed liability" of Milplan Crafts for the accounts of Strait-Jackson Products Company with complainant; advised there was an outstanding balance of $1623.68 and that Strait-Jackson Products Company had promised settlement in full by May 1, 1947. The letter further advised that this settlement would be satisfactory although complainant was in need of the funds due to a fire loss theretofore suffered. This was the first direct communication, written or oral, between complainant and defendants, Miller and Perry, d/b/a Milplan Crafts. Under date of April 19, 1947 Milplan Crafts replied to the letter of complainant and denied any liability for the balance of account. Thereafter and on August 13, 1947, the original bill in this cause was filed.

The record is sufficiently clear that defendants Miller and Perry, d/b/a Milplan Crafts, were aware of the shipments of the scarce oak dimension stock by complainant to Strait-Jackson Products Company subsequent to June 6, 1946; and said defendants had access to the plant, books and records of Strait-Jackson Products

Company when they so desired. It does not appear, however, that they in fact, examined such books and records; though representatives of Milplan Crafts were frequently about the plant of Strait-Jackson Products Company during the time out of which this controversy arises.

The defense of defendants, Miller and Perry d/b/a Milplan Crafts, is in four aspects.

First, that the letter of June 5, 1946 is an offer or proposal of guaranty; and that complainant failed or refused to accept such proposal and to notify Milplan Crafts thereof.

Second, it is insisted that said letter is at most only a conditional guaranty, and that, therefore, acceptance and notice thereof and likewise notice of default of the principal debtor are essential to a binding obligation.

Third, that the letter of June 5, 1946, if a guaranty, is only one of collectibility of the debts of Strait-Jackson Products Company and not a guaranty of payment of such debts, and that notice of both acceptance and default are essential to binding effect in such case.

Fourth, that, by construction of the letter of June 5, 1946, in the light of attendant circumstances, an implied obligation rested upon complainant as guarantee, to furnish defendant guarantors with notice of the indebtedness as they accrued.

On the other hand it is complainant's contention that the letter of June 5, 1946 constitutes an absolute or unconditional guaranty of payment; and that no notice of acceptance or of default is necessary to the binding effect of the guaranty. Complainant says that its acceptance follows from its subsequent shipment of oak dimension stock to the principal debtor in reliance upon

the letter of Milplan Crafts; and especially is this so in the light of defendant Milplan Crafts' knowledge of the principal debtor's acquisition of such lumber from complainants.

We think the Chancellor has correctly construed the letter to be an absolute guaranty. His opinion is so well stated that we adopt it as the opinion of this Court as follows:

"The solution of these issues is to be found largely within the decisions of the Appellate Courts of Tennessee. Research of outside authorities generally reflects what has been aptly characterized in some of the cases as a state of utter and hopeless confusion and conflict. Some of both text and case authorities, other than Tennessee, are hereinafter mentioned. Before utilizing such, the Court has attempted however, to first determine that the views of such jurisdictions upon the subject of guaranty are generally in keeping with the Tennessee jurisprudence upon this vexed subject.

"It is quite apparent that the decision of this case turns throughout upon construction of the letter of June 5, 1946. While, as stated above, general authority on this subject is both vacillating and conflicting, see 38 C. J. S., Guaranty, Sec. 38c, p. 1177 et seq., 24 Am. Jur. 910 et seq., Guar. Sec. 56, 57, the first principle encountered in the process of decision has been definitely settled in Tennessee.

■ "In the early case of Bright v. M'Knight, 1853, 33 Tenn. 158, Judge Carruthers announced the rule as follows:

" 'It is very important to trade and enterprise, which very often, if not most generally, depend upon a combination of the labor and energy of those without means

with the credit of those who have them. The more diffi-
cult it is rendered to make these undertakings available,
by complicated rules of notice, demand, etc., the less
confidence will be reposed in them, and the credit and
encouragement they afford to the enterprising and in-
dustrious will be in a great measure withdrawn.

" 'In pursuance of this view, it was decided by the
Supreme Court of the United States, in Drummond v.
Prestman, 12 Wheat. 515, 6 L. Ed. 712, that a guarantor
shall be held bound to the full extent of what appears to
be his engagements, and the rule in expounding these
undertakings is that the words of the guaranty are to
be taken as strongly against the guarantor as the sense
will admit. Fell on Guar., ch. 5, p. 127; 12 East 227.

" 'No injury can result from this doctrine, as it is in
the power of guarantors to make their obligation de-
pendent upon notice, demand, or any other condition
they see proper, for their own protection and safety.'

"The Supreme Court of Tennessee, at a later time, in
Stearns v. Jones, 1917, 138 Tenn. 589, 199 S. W. 400,
401, reaffirmed the doctrine of Bright v. M'Knight,
supra, in strong terms and expressly applied the rule of
that case as follows:

" 'Applying the above rule for construing such a
guaranty against the guarantor, then though the amount
is limited, where a course of future dealings is contem-
plated, the instrument will be held to be a continuing
one up to the amount limited.

" 'If the guarantor desires to limit his responsibility
to a single transaction or several specific transactions,
not exceeding in all a certain sum, it is as easy to limit
the element of time as that of amount.'

"The Court also pointedly observes the conflict of view which has been heretofore mentioned, as follows:

" 'It is there shown that there are three lines of decisions on the point, due to variant views held as to the primary question of the construction to be given such an instrument—liberal or strict as against the guarantor.'

"It is in light of and with deference to the aforementioned principle that the substantive issues in this cause are to be determined. With the factual background in mind and some elision of unessential verbiage the letter of June 5, 1946 is that Milplan Crafts 'will see to it that any invoices from complainant for oak dimension stock furnished to Strait-Jackson Products Company 'will be taken care of promptly.' The determinative question to be answered is whether this language constitutes an absolute or a conditional guaranty; or, as defendants word the question, whether the guaranty is one of payment or one of collectibility of debt.

██ ██ "Decision of the question as to necessity of notice of acceptance is ruled vitally by the answer to the prior inquiry. The authorities generally recognize that a guaranty of payment of a debt is materially different from a guaranty of collection thereof, the former being regarded as absolute and the latter as conditional. The guaranty of payment binds the guarantor to pay the debt at maturity in the event the money has not been paid by the principal debtor; and upon default by the latter, the obligation of the guarantor becomes fixed. The guaranty of collection obligates the guarantor to make payment upon the condition that the obligee or creditor has prosecuted the debtor without success. See 24 Am. Jur. 886, Guar., Sec. 17. It is said in 38 C. J. S

Guaranty Sec. 11, p. 1148 to be generally held that the rule requiring notice by the guarantee of his acceptance of the guaranty applies only where the guaranty is in legal effect an offer or proposal; and where the transaction is not merely an offer of guaranty but amounts to a direct or unconditional promise of guaranty, unless notice of acceptance is made a condition of the guaranty, all that is necessary to make the promise binding is that the promisee should act on it, that notice of acceptance is not necessary. Conflict of authority is recognized to exist.

■ ■ The Supreme Court of Tennessee has rather positively aligned itself on this point in its opinion in the case of Yancey v. Brown, 1855, 35 Tenn. 89, as follows:

" 'Upon such consideration we have adopted the doctrine of the English authorities upon this subject; and the settled law in this State is now that, where the instrument purports to be an absolute engagement, no notice either of the acceptance of the guaranty or of non-payment by the principal is necessary.

" 'That such absolute guaranty takes effect as soon as it is acted upon; and to support an action against the guarantor nothing more is necessary to be shown than that the party to whom it is addressed, acted under it. We are fully aware that the current of American authorities established a different doctrine. According to the later authorities, the liability of a guarantor is made to depend upon principles of commercial, rather than those of common law.'

"The Court then recognizes that the requisite of notice is a new principle, recently introduced into the jurisdiction of some of the states upon the authority of

the United States Supreme Court. Judge McKinney, however, states that the Tennessee Supreme Court has felt constrained to adhere to the established principle of the common law as a more just and sensible rule of decision.

"That such is the rule in this state is recognized by the Court of Appeals of Tennessee as late as the case of Roller v. Hamilton, 1931, 13 Tenn. App. 241 and also in Villines v. Parham-Lindsey Groc. Co., 1928, 6 Tenn. App. 254, 262. See also Mt. City Mill Co. v. Lindsey, 1928, 8 Tenn. App. 337, 351.

"In Klein v. Kern, 1894, 94 Tenn. 34, 28 S. W. 295, 296, the Supreme Court re-announced that 'it is well settled in Tennessee that, when the guaranty is absolute, no demand or exhaustion of the maker is required, nor is any notice required of the acceptance or default. It does not matter whether the guaranty stipulates that the maker will pay, or that the guarantor will pay, nor whether the maker is solvent or not, in either event the undertaking is absolute, and the guarantor must pay the amount, or see that it is paid. It is not the case of guaranty of solvency or collectibility, which requires previous demand and suit.'

"The above language is reiterated in the opinion of the Supreme Court of Tennessee in Elgin City Banking Co. v. Hall, 1907, 119 Tenn. 548, 562, 108 S. W. 1068.

"Now, is the last paragraph of the letter of June 5, 1946 to be properly viewed as an absolute guaranty or is it a conditional guaranty?

"It is here that the rule of construction adopted in Tennessee and heretofore quoted invades the instant case in primary force.

"While, as noted, outside authority is of dubious value, before further reference is had to the opinions of the Appellate Courts of this State, it is of some help to note the decision of the North Carolina Supreme Court in Page Trust Co. v. Wachovia Bank & Trust Co., 1924, 188 N. C. 766, 125 S. E. 536, 37 A. L. R. 1368. In this case the contested guaranty was found in a letter from the First National Bank, Hamlet, North Carolina, dated March 10, 1923 to Merchants National Bank, Raleigh, North Carolina, which was as follows:

"'We inclose two short time renewal notes in the sum of $4,500, which we thank you to place to our credit, less the discount and stamps, and advise us. We consider these notes perfectly good, and will see that they are promptly taken care of at maturity.'

"One of these notes was not paid at maturity by the makers or endorsers. Upon such non-payment, the amount due on the note was charged back against the account of the guarantor. In its determination of the nature and character of the obligation assumed under the aforementioned letter, the Court said:

" 'The letter dated March 10, 1923, addressed to the cashier of the Merchants' National Bank, at Raleigh, N. C., and signed by the cashier of the First National Bank of Hamlet, N. C., is sufficient in form as a guaranty of the prompt payment of the note inclosed with the letter, and discounted in accordance with the request contained therein. Ashford v. Robinson, 30 N. C. 8 Ired. L. 114; Birdsall v. Heacock, 32 Ohio St. 177, 30 Am. Rep. 572'.

"In Missouri the Appellate Courts have had a most extended and oft repeated experience with the subject involved in the instant case. In some aspects of the

subject of guaranty the Courts of Missouri have adopted views more favorable to the guarantor than those announced by the Courts of Tennessee. In People's Bank v. Stewart, 1911, 152 Mo. App. 314, 133 S. W. 70, 72, the Court had before it a writing from guarantor to guarantee as follows:

" 'Aurora, Mo., July 14th, 1906. People's Bank. Cash checks for Roley & Co. till next week will see it Pade. P. W. Stewart.'

"The defendant, Stewart, was the owner of a tract of land upon which a partnership known as Roley & Co. was mining for lead and zinc ores. Lack of adequate operating finances on the part of Roley & Co. were impeding its production. It was this situation which caused the defendant guarantor Stewart, to issue the writing above quoted. After elaborate examination of prior opinions in that State, the Missouri Court said:

" 'While there are other authorities in this state, the above are sufficient to show what the rule is, so for as our courts are concerned. If all the orders were in the same form as the one described . . . then they were direct and absolute obligations of the defendant, and not mere proposals of guaranty, and no notice of the acceptance of his guaranty was required. The above authorities all agree on this proposition.'

"The Court holds the writing quoted to constitute an absolute or unconditional guaranty.

"Little is gained by extended examination of general authorities bearing upon the proposition of what constitutes an absolute or unconditional guaranty as distinguished from the conditional guaranty or offer of guaranty. Many illustrations are to be found in 38 C. J. S., Guaranty, Sec. 7, p. 1139 et seq., and 24 Am. Jur.

884, et seq., Guar., Secs. 15, 16, 17. See also, W. T. Rawleigh Medical Co. v. Laursen, 25 N. D. 63, 141 N. W. 64, 48 L. R. A., N. S., 198 and J. R. Watkins Medical Co. v. Brand, 143 Ky. 468, 136 S. W. 867, 33 L. R. A., N. S., 960.

"In Klein v. Kern, 1894, 94 Tenn. at page 34, 28 S. W. 295, 296, the guaranty was•in substance that Kern did guarantee that one Haupt would pay to Klein, on account of a debt due him from Haupt, the sum of $1,000.00 on or before November 1, 1892. The Supreme Court of Tennessee held this to be an absolute guaranty, with respect to which no notice of acceptance or default was required to fix the obligation of the guarantor. The language of the opinion seems pertinent—'It does not matter whether the guaranty stipulates that the maker will pay, or that the guarantor will pay, nor whether the maker is solvent or not, in either event the undertaking is absolute, and the guarantor must pay the amount, or see that it is paid.'

"It is to be noted that the Court treats the obligation of the guarantor to pay the amount or to see that it is paid as legal equivalents.

"In Bright v. M'Knight, 1853, supra, the defendant guarantors contended upon the authority of the U. S. Supreme Court's opinion in the case of Lee v. Dick, 10 Pet. 482, 9 L. Ed. 503, from West Tennessee that 'when the guaranty is prospective, and to attach upon future transactions, and the guarantor uninformed whether his guaranty has been accepted and acted upon or not, the fitness and justice of the rule requiring notice is supported by considerations that are unanswerable.' The trial Court had charged the jury that the writing there in question did not, on its face, purport to be an absolute

undertaking and that in such case, the liability of the guarantors could only be fixed by notice from the guarantee of acceptance of the guaranty.

"Judge Carruthers forcefully said:

"'We cannot concur in the construction and effect given by his honor to the instrument in question, from which the necessity of notice of acceptance to the guarantors, in order to bind them, is made to result as a consequence.

"'This branch of the law came up and was considered by us at last term, in the case of Vanleer v. Crawford, 32 Tenn. 117. That case was elaborately discussed, and involved, as it was argued, the whole doctrine on this subject. But inasmuch as we considered that notice of acceptance was in effect, if not in fact, given to the guarantor, there was no express decision of the exact point now presented, and on which this case must turn.

"'In that case, however, it is said "that if the case depended alone upon the original guaranty of the 26th of January, 1849, which was enclosed in a letter from the plaintiff in error to Lanier, it might be very plausibly maintained, upon the construction of that instrument that any person who hired slaves to Lanier, pursuant to its terms, and upon its faith, might support an action against the guarantor, without showing anything more than simply that he had acted upon it."

"'That instrument was in these words: "I do hereby guaranty the payment of any contract that Sam Lanier may make for the hire of negroes during the year 1849, to be used at his iron-works, or any iron-works, in which he may be interested in Decatur or Perry county, Tennessee."

" 'If that would have been held to be obligatory without notice of acceptance, as was clearly intimated, if the case had required it, there can surely be no doubt about the case now before us. We are aware, as stated in that case, of the great and irreconcilable conflict of the most respectable authorities upon this question.'

"After mentioning the highly respectable authorities supporting the contrary view, the Supreme Court of Tennessee flatly aligns itself with the common law doctrine that ' "an absolute present guaranty, complete in its terms, and fixing the liability of the guarantor, takes effect as soon as it is acted upon." ' '

"Examination of the opinions of the Appellate Courts of Tennessee long subsequent in point of time to those just mentioned reveals that their virility as authority in this state is entirely undiminished.

"Comment was made at the outset upon defendants' insistence that complainant guarantee was obligated to notify defendants Miller and Perry, guarantors, of transactions with Strait-Jackson Products Company. Obviously, this would amount to an obligation upon the guarantee created by implication, by way of construction of the letter of June 5, 1946. Such a contention seems to run squarely afoul of the rule of construction adopted in this State and heretofore mentioned. Some of the authorities hereinbefore cited and quoted from expressly state that such must be specifically provided in the agreement in order to place such a burden upon the guarantee.

"In Mountain City Mill Co. v. Lindsey, 1928, 8 Tenn. App. 337, upon the authority of Stearns v. Jones, supra, and other cases therein cited, the controlling rule in this connection is said to be that in cases of absolute, con-

tinuing guaranty such as is that in the present case, the guarantor must take care of himself and obtain all the information essential to his interest which lies within his reach; that it is no part of the duty of the guarantee to furnish information of the transactions between the principal-debtor and the guarantee as they occur or of the state of account as between them.

■ ''The authorities generally seem fairly uniform that this matter of notice to the guarantor of the transactions as between principal-debtor and guarantee is purely one of special contract; and that in the absence of specific provision so requiring, no obligation rests upon the guarantee to advise or notify.

■ ''Upon the authorities cited and many others considered, the Court is of opinion that the letter of June 5, 1946, is an absolute, continuing guaranty; that no notice of acceptance or of default of the principal-debtor is required as a condition to liability of the guarantor; and that no obligation rests on the guarantee of giving notice of the transactions or state of account in the absence of special provision therefor.

''Thus, the Court is of opinion that complainant is entitled to recover directly of defendants Strait and Michie, Administrator, and to recover from the guaranty as against defendants, Miller and Perry, the sum of $1623.68, plus interest at the rate of 6% per annum from April 19, 1947, and the costs of this cause.

''Decree may be presented accordingly, reserving all exceptions desired.''

Judgment will accordingly be entered here against appellants for $1752.23 and costs of the appeal.

Anderson, P. J., and Baptist, J., concur.