Meredith v. Dibrell.

D. M. MEREDITH, *Admr.,* *v.* CORA A. DIBRELL *et al.*.*

(*Nashville.* December Term, 1912.)

**PRINCIPAL AND SURETY.** Extension of time to principal with express reservation of right of recourse against surety does not discharge surety.

Under the negotiable instruments law (Acts 1899, ch. 94, sec. 120, subsec. 6), providing that a person secondarily liable on an instrument is discharged by a binding extension of time of payment, etc., unless made with his assent, or unless the right of recourse against him is expressly reserved, the estate of a surety on a note was not discharged by the taking of a renewal note of the principal, extending the time of payment, without notice to the representatives of the deceased surety, where the extension was given under the express reservation of the right of recourse against the surety or his estate. Such was the rule of law before as well as since said statute. Such contract does not embarrass the surety's remedy under section 3517 of Shannon's Code.

Code cited and construed: Sec. 3517 (S.); sec. 2725 (M. & V.); sec. 1968 (T. & S. and 1858).

Acts cited and construed: Acts 1899, ch. 94, sec. 120, subsec. 6.

Cases cited and approved: Morgan v. Smith, 70 N. Y., 537; Salmon v. Clagett, 3 Bland. (Md.), 125; Sohier v. Loring, 6 Cush., 537.

---

FROM WHITE.

---

Appeal from the Chancery Court of White County.— A. H. ROBERTS, Chancellor.

---

*Upon the effect of the renewal of a principal's obligation to release party to a note executed to the creditor as collateral, see note in 23 L. R. A. (N. S.), 141.

W. T. Smith, for intervening petitioner.

J. H. Anderson, for defendants.

Mr. Justice Green delivered the opinion of the Court.

In this suit the estate of J. L. Dibrell, deceased, is being administered and wound up in the chancery court as an insolvent estate.

The Citizens' National Bank of Charleston, W. Va., has filed a petition in the case to hold said estate liable upon a promissory note, the property of petitioner, which note was executed by C. S. Oldrod, Geo. L. Washburn, and Buch H. Keeney, and signed by the deceased, J. L. Dibrell, as security.

The original note matured after the death of Dibrell, and at its maturity, under the concurrent finding of the chancellor and the court of civil appeals herein, it may be conceded that, by an arrangement between the bank and other parties to the note, a new note was taken and the time for payment of this obligation extended by valid contract without notice to the representatives of the deceased.

The chancellor and the court of civil appeals rendered a decree against the bank upon the foregoing facts found by them, overruling another contention made by the bank, which we will now proceed to consider.

Only one deposition is taken upon this controversy, that of the cashier of petitioning bank. After testifying to the facts relating to the taking of the renewal note from the other parties to the note, he states that

this renewal was taken and this extension given to said parties with the express reservation at the time on the part of the bank of all its rights against the surety, J. L. Dibrell, or his estate.

It is said for the bank that, even though an extension of time be granted upon a valid consideration to the principal debtor without the knowledge of the surety, such an extension does not release the surety, provided the holder at the time of the extension reserves all rights against the surety.

The Negotiable Instruments Act (chapter 94, sec. 120, Acts of 1899) provides:

"Sec. 120.   Persons Secondarily Liable, How Discharged.—A person secondarily liable on the instrument is discharged:   .   .   .

"(6)   By an agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

The court of civil appeals was of opinion that reservation of the right of recourse against a surety would be unavailing to the holder, and that an extension would release the surety, notwithstanding such reservation in the contract with the principal debtor, unless the surety were informed of the extension.

In this we think the learned court was in error.

The language of the Negotiable Instruments Act seems plain. A binding agreement to extend the time of payment under the act will not release the surety, if

made with his assent, *or* if the right of recourse against him is reserved.' In neither of these cases is he released.'

Such was the law long prior to the passage of the act in question. If the creditor's rights against the surety are reserved, and this reservation made a part of the contract of extension with the principal debtor the result' is only a qualified extension. While it is true the creditor has obligated himself not to proceed against the' principal debtor until the maturity of the extension, he has not changed his relations with the surety at all, since he has especially reserved all rights against him, including the right to sue him at once. Inasmuch as this reservation of rights against the surety becomes a consideration of the contract for extension entered into with the debtor, the latter impliedly agrees that the surety may have all his original rights preserved against him as principal debtor; and while the creditor cannot bring suit against the principal pending the extension, the surety, if he pays the debt, may sue the principal at once. Therefore, the surety's contract is not changed, and there is no equitable reason to justify his discharge.

"The ground upon which a surety is held discharged when further time for payment is given the principal debtor is that the rights of the surety are varied, as he cannot then, when the debt is due and payable, make payment, and thus put himself in the place of the creditor according to the original implied contract, and enforce repayment from the principal. Where the remedies of the creditor are reserved against the sureties,

notwithstanding the new agreement with the principal, the situation of the parties is not varied, and the rule does not apply. When the creditor proceeds against the surety in such case, and the surety pays, he is then entitled to the place of creditor, as it was originally, and may in turn enforce the principal, who may not set up against the surety the new arrangement with the creditor." *Morgan* v. *Smith,* 70 N. Y., 537.

"Such an agreement, reserving the remedies, might not in many cases be of the least benefit to the principal debtor, since it leaves him entirely at the mercy of his surety; yet if the parties do so expressly contract, the surety can have no cause to complain that the implied contract has been altered or impaired in any way to his prejudice, and therefore he cannot be discharged." *Salmon* v. *Clagett,* 3 Bland (Md.), 125.

"It is very obvious that a principal debtor may gain little or nothing of such composition as this with his creditor, inasmuch as he is left liable to a like proceeding against him by his sureties, which his creditor might have instituted if no composition had been made. But if he pleases to subject himself to that liability by voluntarily executing an agreement which has that effect, there is no legal reason why he should not be held to that agreement." *Sohier* v. *Loring,* 6 Cush., 537. See Stearns, Law of Suretyship, sec. 92; 1 Story, Equity Jurisprudence, sec. 326; Byles on Bills (3d Ed.), 299; Brandt on Suretyship, sec. 329.

Reference to the text-books and cases cited thereunder show that this principle of the law of suretyship has

been generally accepted in this country and in England for many years, and it is undoubtedly sound. The Negotiable Instruments Act merely embodied an old rule into the statute.

We do not think that the sureties' remedy under section 3517 of Shannon's Code would be at all embarrassed by the making of such a contract between the principal debtor and the holder of a note. As seen, these contracts do not affect the rights of the surety at all, and while the debtor by a valid contract of extension does disable himself from bringing suit in his own interest during that extension against the principal debtor, he would still be required, upon notice given under Shannon's Code, sec. 3517, to bring such a suit at the behest of the surety. The debtor has impliedly agreed that all the surety's original rights shall be preserved.

Prior to the adoption of section 3517 of Shannon's Code, a surety could go into equity and compel a suit by the creditor against the principal debtor. This statute merely gives him a more speedy remedy. A contract for extension, such as the one made between the bank and the principal debtors in this case, does not deprive the surety of any rights which he has under the statute or otherwise, and therefore such a contract for extension does not release him from his obligation.

The decree of the court of civil appeals and of the chancellor will be reversed, and this cause remanded to the chancery court of White county for further proceedings.