## MRS. FRANKIE B. VILLINES v. PARHAM-LINDSEY GROCERY COMPANY, et al.

Middle Section. November 22, 1927.

Petition for Certiorari denied by Supreme Court, February 4, 1928.

1. **Guaranty. Where written guaranty is given to secure money to be loaned to another, the obligation arises on the written guaranty and not on the note thereafter given.**

   In an action to have a certain written instrument cancelled where the evidence showed that the instrument was given to a bank in the nature of a guaranty and authorized the bank to loan another company money not to exceed a certain sum, held that the obligation arose on this instrument and not on the notes that were thereafter given by the company receiving the money from the bank.

2. **Guaranty. Contracts of guaranty are construed according to their ordinary meaning.**

   Contracts of guaranty are to be construed according to the ordinary meaning of the language used and with a view to carry out the intent expressed.

3. **Guaranty. The use of the words "surety" and "endorsed" in the instrument does not necessarily control the liability of the parties.**

   The fact that the words "surety" and "endorsed" are used in the instrument is not of itself sufficient to make the parties liable as such, but the intention must control, as gathered from the whole instrument.

4. **Contracts. Where ambiguous language is used, the court looks to the whole instrument and to the acts of the parties to ascertain their intent.**

   The general rule for the interpretation of contracts that ambiguous language will be construed most strongly against the author of it applies to contracts of suretyship. The construction of the contract is a matter of law for the court; if, however, the parties themselves have placed a construction on the contract by their acts, the court will adopt that construction.

5. **Guaranty. Definition.**

   A guaranty is a contract by which one person is bound to another for the fulfillment of a promise or engagement of a third party. It is a collateral promise or undertaking by one person to answer for the payment of some debt or the performance of some contract or duty in case of default of another, who in the first instance is liable.

6. **Guaranty. Guarantor and surety distinguished.**

   A surety is an insurer of the debt, or obligation, while the guarantor is an insurer of the ability or solvency of the principal. Hence one's liability is direct and primary, and the other's liability is secondary.

7. **Contracts. Guaranty. Contract guaranteeing the payment of money loaned to another becomes binding when money is actually advanced.**

   Where certain parties signed a written guaranty agreeing to guarantee the repayment of money loaned to a certain company up to $75,000, held that when the bank actually lent money to the company it amounted to an

acceptance by the bank of the promise and the guarantors were bound to pay any amount that the bank might lend up to the amount limited in the contract.

8. **Guaranty. Consideration. The lending of money to the person is sufficient consideration to support a contract of guaranty.**

Where a contract was made guaranteeing to a bank the repayment of certain money loaned to a grocery company, held that the lending of the money to the company was sufficient consideration to support the contract.

9. **Principal and agent. Notice to the agent constitutes notice to the principal.**

Where certain stockholders constituted one of their number as agent to procure money for the corporation and the agent acted in securing the money and renewals thereof, held that any notice to him was notice to the principals.

10. **Guaranty. Where parties signed an unconditional guaranty they are liable for the repayment of debt regardless of any notes that may be given or renewed.**

Where certain stockholders signed a contract of guaranty in order that their corporation might secure a loan and the corporation gave its note for the money borrowed, held that the parties were bound regardless of their consent to renewal notes.

11. **Guaranty. Interest and attorneys' fees held properly included in account guaranteed.**

Where certain stockholders signed a contract of guaranty in order that their corporation might borrow money from the bank and the bank took from the corporation notes providing for interest and attorneys' fees, if the notes were placed in the hands of an attorney for collection, held that the interest and attorneys' fees constituted a part of the debt that was guaranteed and could be collected, providing it did not exceed the limit placed in the contract of guaranty.

Appeal from Chancery Court, Davidson County; Hon. R. T. Smith, Special Chancellor.

Affirmed.

Thos. W. Schlater, Jr., and Edwin A. Price, of Nashville, for appellant, Mrs. Villines.

Roberts & Cooper, of Nashville and John E. Garner, of Springfield, for Grocery Company, Lindsey et al.

Douglas Henry, of Nashville, for appellee, Hamilton National Bank.

CROWNOVER, J. The appellant, Mrs. Frankie B. Villines, widow of Dallas M. Villines, filed the original bill in this cause against Parham-Lindsey Grocery Company, the Hamilton National Bank, of Chattanooga, and others, seeking to have surrendered and cancelled a written obligation securing the indebtedness of said Grocery Company to said Bank. The obligation is as follows:

"June 27, 1921.

"For and in consideration of the agreement on the part of the Hamilton National Bank, of Chattanooga, Tennessee, to loan the Parham-Lindsey Grocery Company certain money, from time to time, in the conduct of its business, we the undersigned, stockholders of the Parham-Lindsey Grocery Company, hereby agree that we are firmly bound to said Bank as surety on

the indebtedness of the Parham-Lindsey Grocery Company for an amount not in excess of $75,000, with the same force and effect, and in the same manner as if we had actually endorsed notes of this amount.''

This obligation was signed by Mrs. Villines and seven other stockholders, but the Grocery Company did not sign it.

The bill alleged that said paper was merely an offer or proposal of suretyship with the obligation of endorsers, based on no consideration, and that the same was not accepted by the Bank and no notice of acceptance was given complainant; that the contract was lacking in mutuality, and that complainant's signature was obtained when she was of unsound mind and not capable of understanding the nature or effect of said paper, and that the procuring of her signature was an imposition and a fraud upon her; that the notes subsequently executed by said Company to said Bank provided for interest, attorney's fees and cost of collection, which was a material alteration of the original agreement and operated to release and discharge complainant as surety; and that at most the said paper imposed an obligation of suretyship, and that complainant should be released, because said Bank had permitted the notes of the Grocery Company to be renewed upon the payment of interest, from time to time, and had failed to give complainant notice of the renewals, extension of time of payment, and of default in payment. Complainant prayed for cancellation of said obligation and that the Bank be enjoined from bringing a suit against complainant on this indebtedness of the Grocery Company.

The Hamilton National Bank filed an answer and cross-bill in which it alleged that it had accepted the said paper as a guaranty for the indebtedness of the Grocery Company and upon the faith of said obligation it had lent money to the Grocery Company from time to time in considerable amounts, some of which had been paid and the balance renewed, and that on September 21, 1923, on the faith of said guaranty it had loaned to the Grocery Company $11,375, which was evidenced by a note, which is as follows:

''$11,375.                  ''Chattanooga, Tennessee
                                    ''September 21, 1923.

''Thirty days after date we promise to pay to the order of Hamilton National Bank Eleven thousand three hundred seventy-five and 00 dollars, at the Hamilton National Bank. Value received with legal rate of interest after maturity until paid. If this note is collected by an attorney, by suit or otherwise, we agree to pay all attorney's fees and cost of collection. It is agreed by makers and endorsers hereof that demand, protest and notice of protest of this paper are expressly waived.

                         Parham-Lindsey Grocery Company
                         By T. G. Parham, Pres.''

The cross-complainant bank prayed for a decree for said amount, together with interest and attorney's fees against all of said parties; and, denied the other allegations of the bill, and insisted that said guaranty was a valid obligation and that complainant, Mrs. Villines was bound for said indebtedness.

The other defendants filed a demurrer and an answer to the original bill and insisted that it be dismissed as to them, and, all of the defendants to the cross-bill, except Mrs. Villines and T. G. Parham, answered said cross-bill and admitted the indebtedness, their liability and solvency. The defendant Parham made no defense to said cross-bill, and a pro confesso was taken against him, but the defendant Mrs. Villines filed an answer to said cross-bill and insisted that the note was a renewal of former notes made without her knowledge or consent, and that her liability thereon was not more than that of an endorser, and that she should be released on account of the bank's failure to give notice of dishonor.

Later the bank filed an amended answer and cross-bill so as to allege and plead estoppel, in that, T. G. Parham was the agent of Mrs. Villines and the other stockholders in procuring her signature to said obligation, and that the bank had lent said money to the Grocery Company on the faith of said guaranty.

On February 1, 1924, by agreement a decree for $8,093, balance due on said note, with interest and $250 attorney's fees was rendered in favor of said Bank against the Grocery Company and all of the parties who signed said obligation, except as against Mrs. Villines, and it was agreed that this decree should not affect the rights of parties to this suit.

On July 15, 1924 the original bill was dismissed by complainant as against the Grocery Company and the other parties except the Hamilton National Bank.

On April 21, 1925 the Special Chancellor dismissed the original bill and sustained the cross-bill, decreeing Mrs. Villines' liability on said obligation, and referred the case to the master to ascertain the balance due on said note.

The master reported that there was $2266.50 due on the indebtedness to July 3, 1925, which report was confirmed by the Special Chancellor and decree was rendered on the cross-bill against her in favor of said Bank in the sum of $2266.50 and $150 solicitor's fees. To which decree complainant excepted and has appealed to this court, and has assigned errors.

The facts necessary to be stated are that in the spring of 1921 Dallas M. Villines, the husband of appellant, and T. G. Parham conceived the idea of organizing a corporation to operate a chain of grocery stores in the City of Knoxville, Tennessee, to be managed by Parham, and they discussed the matter of raising funds with de-

fendant E. A. Lindsey, and after some negotiations they succeeded in interesting several other parties, defendants in this case, in the proposition, and they agreed to organize a corporation to be known as the Parham-Lindsey Grocery Company, with a capital stock of $150,000. Villines and Lindsey each agreed to subscribe for $25,-000 of the capital stock, and the other defendants subscribed for different amounts, but the total amount subscribed was only $129,000, and each paid only ten per cent of the amount subscribed. Mrs. Villines was not connected with the proposition at this time but her husband Dallas M. Villines died on April 9, 1921 about the time this corporation was organized, and devised and bequeathed all of his property to his wife, Mrs. Villines. In the organization of said corporation, Thos. G. Parham was elected president and E. A. Lindsey treasurer, and after operating for a short time at Knoxville, the corporation decided to operate in the City of Chattanooga, Tennessee, and on June 15, 1921 it bought thirty-seven stores in Chattanooga from Frank McDonald, and at this time it was decided to remove its banking account from Knoxville to Chattanooga. Mr. Parham interviewed T. R. Preston, president of the Hamilton National Bank, with a view of the Company borrowing some money from the Hamilton National Bank. Mr. Preston, after inquiring about the officers and stockholders of the Grocery Company, suggested to Mr. Parham that he would investigate the solvency of said parties and would advise him. Later Mr. Preston stated that the Bank would be willing to lend some money to the Grocery Company, provided its stockholders would secure the indebtedness. Mr. Parham took up the matter with Mr. Lindsey, and after a conference, Mr. Lindsey drafted the obligation herein first above set out, which was signed by them, and Parham then carried this obligation around to the other stockholders and procured their signatures to said instrument, including that of the complainant Mrs. Frankie B. Villines.

After said instrument had been executed, Parham took it back to Mr. Preston, and he says that Preston inquired of him as to the payment of the capital stock subscribed, and on being informed that only ten per cent had been paid in, he replied that they could not expect the Bank to lend them more money than had been paid in by the subscribers, and wrote in pencil on said instrument "30 M," meaning that the amount of credit to be extended on said obligation was $30,000; but Preston and Harrell say they agreed to extend credit up to the amount limited in the instrument, but that they never reached the limit; and, thereafter the Bank loaned various sums from time to time to the Grocery Company. On July 23, 1921, it loaned the Grocery Company $20,000; and on August 3, 1921, $10,000; September 14th, $6,500; October 14th, $2,500, etc. Several

of said notes were renewed, some consolidated and some paid. On March 14, 1922 the notes aggregated $42,492; On December 18, 1922 the total notes aggregated $50,000. After that time the Grocery Company began to pay on said indebtedness and it was reduced from time to time up to September 21, 1923, when the Grocery Company executed the note hereinabove set out of $11,375.

All of this preceding indebtedness had been evidenced by notes of various sums, which had been renewed many times and interest paid thereon, but the Bank had retained said written obligation and had not released its rights as against the parties.

The said stockholders, from time to time, paid on the subscription of stock until they had practically paid the respective amounts subscribed, Mrs. Villines paying on her husband's subscription. The Grocery Company was not a financial success, and in March, 1923, sold its assets to H. G. Hill & Company, applied the proceeds on its indebtedness and ceased to be a going concern and was insolvent, but owed the balance above mentioned to the Bank.

The Chancellor held that complainant was of sound mind and was capable of understanding the nature of the obligation of said instrument; that Parham was her brother-in-law and was the agent of complainant, the Grocery Company and said stockholders in all the transactions with the Bank, in procuring the loan and in the execution of said obligation wherein he obtained the signatures of the parties, and in the delivery of said paper to the Bank, and that he was the agent of the Grocery Company and the stockholders in the renewal of the notes, and had full knowledge that the Bank was dealing with the Grocery Company on the faith of said paper and agreed that said Bank might reserve its right against said parties in the renewals of the notes, and that the stockholders and Mrs. Villines had full knowledge of his agency and intentionally permitted said paper to remain of full force and effect and continued to stand bound thereon. The Chancellor further held that the Bank accepted said paper and acted on the faith of it in making said loans, and permitted said notes to be renewed, but reserved its rights on said written instrument against all the parties.

The Chancellor further held that said Bank after it obtained a decree against the other parties for $8,093, that the Bank extended the time of payment and did not have execution issued on said decree but extended time of payment upon the payment of interest, and agreed to let those defendants pay along on said decree up until the time that the decree was rendered against Mrs. Villines, and he held that the extension of time on said decree did not operate so as to release Mrs. Villines, as the Bank had expressly reserved its rights against Mrs. Villines when it extended the time.

The complainant has assigned seventeen errors, which when summarized are in substance:

That the Chancellor erred in holding that complainant was bound by said obligation, and in dismissing her bill and in rendering a decree for $2266.50 against her on the cross-bill; in holding that when said paper was executed, complainant was of sound mind and could and did understand the nature and effect thereof; in holding that the Bank accepted said paper and acted on the faith of it in making said loans; in holding that Parham was the agent of complainant and the Grocery Company in all transactions with the Bank in procuring the loans, in the execution of said obligation, and in the renewals of the notes, and that Parham had knowledge that the Bank was dealing with the Grocery Company on the faith of said paper, and reserved its rights against said parties, and agreed that it might do so, of all of which complainant and others had knowledge and intentionally permitted said paper to remain of force and effect and continued to stand bound.

It was insisted that the Chancellor erred in not holding that said paper at most created only the relation of suretyship, in which complainant was bound, if at all, only as endorser; that said paper was only an offer or proposal of suretyship and as such was rejected by said Bank; that the Bank did not obligate itself to lend any amount of money and said obligation was without consideration; that said Bank gave no notice to the complainant of its acceptance of such offer of suretyship; that complainant was released by reason of the renewals of the notes and extensions of time of payment for valuable considerations, without notice to complainant and without her knowledge and consent; that the agreement to extend time of payment and not to issue execution on the decree against the other cross-defendants, who were solvent, upon payment of interest operated as a release of complainant; that the addition of attorney's fees, interest and cost of collection written in said notes, not originally provided for, changed the obligation of said paper, and constituted an alteration so as to release complainant; and that complainant was of unsound mind and not capable of understanding the nature and effect of said paper.

We are of the opinion that the decree of the Special Chancellor is correct, and we concur with him in the finding of facts without going into detail.

The liability is on the written obligation and not on the note, and the makers of the obligation are liable for "the indebtedness" of the Grocery Company, which might be evidenced by notes or otherwise. The note is a mere evidence of the indebtedness. The instrument was a continuing, absolute guaranty of the indebtedness. It was continuing because the Bank was to lend money "from time to

time," and no time limit was fixed and it was intended to cover future transactions. 12 R. C. L., 1061; 28 C. J., 960. It was absolute as the subscribing stockholders were firmly bound as surety on the indebtedness to an amount not in excess of $75,000, with the same force and effect and in the same manner as if they had actually endorsed notes of that amount. Stearns· v. Jones, 138 Tenn., 589, 199 S. W., 400. The fact that they used the words "surety" and "endorsed," is not of itself sufficient to make them liable as such, 28 C. J., 891, sec. 6, but the intention must control, as gathered from the whole instrument, the four corners of the instrument. 32 Cyc., 71-72; 28 C. J., 933.

This was a non-negotiable instrument and is controlled by the rules applicable to the construction of such instruments. The signatures were obtained before delivery and not for the purpose of transfer, but to give credit.

If this were merely a contract of endorsement, where one placed his name on the back of a non-negotiable instrument before delivery to give credit, he would be liable as a maker or guarantor according to the circumstances of the case, and the understanding of the parties. See Comparree v. Brockway, 11 Humph., 358.

The language used in this instrument is ambiguous and we are forced to look to the whole instrument and to the acts of the parties. Comparree v. Brockway, 11 Humph., 358.

"The general rule for the interpretation of contracts that ambiguous language will be construed most strongly against the author of it applies to contracts of suretyship. The construction of the contract is a matter of law for the court; if, however, the parties themselves have placed a construction on the contract by their acts, the court will adopt that construction." 32 Cyc., 72, sec. A.

The parties referred to the instrument as a guaranty and treated it as such. A guaranty is a contract by which one person is bound to another for the fullfilment of a promise or engagement of a third party. It is a collateral promise or undertaking by one person to answer for the payment of some debt or the performance of some contract or duty in case of default of another, who in the first instance is liable. 28 C. J., 866. A surety is an insurer of the debt, or obligation, while the guarantor is an insurer of the ability or solvency of the principal. Hence one's liability is direct and primary, and the other's liability is secondary. 28 C. J., 890-891.

It is insisted that this paper never became effective, as the Bank never agreed to lend any sum, and arbitrarily set the limit at $30,-000, thereby rejecting the offer or proposal of suretyship.

We are of the opinion that the paper did become effective for the reasons hereinafter set out. It will be observed that by the terms of

said instrument the Bank had not agreed to lend any specific sum—
"certain money from time to time in the conduct of its (Grocery Company's) business;" whereas, the parties agreed to be firmly bound as surety on the indebtedness for an amount not to exceed $75,000. If it were only an offer or proposal, Parham was the agent of the parties, the stockholders, and when the Bank agreed to and did actually lend the money, it amounted to an acceptance by the Bank, and the parties are bound by Parham's knowledge, and even had the Bank limited the credit to $30,000, or any other sum, it would not be a rejection of the proposition, as the Bank had not agreed to lend any specific sum.

It is insisted that there was no consideration and that appellant is therefore not bound. We are of the opinion that the lending of the money to the principal is a sufficient consideration. 21 R. C. L., 959. Where the contract of guaranty is made at or before the date of the principle contract then one consideration is sufficient. 28 C. J., 917-918.

It is insisted that appellant was of unsound mind and did not and could not understand the nature and effect of the instrument at the time she signed it. After a review of the record, we are of the opinion that she was of sound mind, and could and did understand the nature and effect of the execution of this instrument.

It is insisted that Parham was the agent of the Bank in obtaining the signatures on this paper, and also in obtaining the loans from the Bank. We hold that he was not the agent of the Bank but was the agent of the corporation and its stockholders in all these transactions. Mrs. Villines understood all about the matter and assumed her husband's obligation as stockholder, paid the assessments on the subscription with the expectation of reaping all the benefits; hence she was a stockholder and she is liable to the same extent as the other stockholders. These stockholders were interested in the corporation, and signed the instrument in order to lend credit for the purpose of obtaining the loans, and thus intended to indirectly reap the benefits of the loans. They stated in that paper that they were stockholders, and they entrusted the whole matter of obtaining the loan to Parham and he was their agent in the matter of obtaining the loans, in the renewals thereof, and notice to him of the acceptance by the Bank of the offer of liability on the part of these parties was sufficient. Parham as their agent had knowledge of all these things, and that the Bank was making the loans on the faith of this guaranty, and they are affected with such knowledge. However no notice is necessary when the guaranty is absolute. Bank v. Hall, 119 Tenn., 548, 562, 108 S. W., 1068; Klein v. Kern, 94 Tenn., 36, 28 S. W., 295.

It is insisted that appellant was released by reason of the renewal of the notes and the extension of time of payment for valuable considerations (payment of interest) without notice to complainant, and without her knowledge and consent. We think there is nothing in this contention for several reasons. The parties were guarantors of the indebtedness which was evidenced by the notes. The notes were mere memoranda of the indebtedness, and their loss or destruction would not destroy the indebtedness. There was no time limit in the written instrument, hence it was continuous, and the extension of time could not affect the situation. The Bank held this original instrument, a continuing obligation, against all these parties, and did not at any time release any of the parties, and we think that the Bank did in the various transactions exactly what all the parties originally intended should be done when they signed that paper, and by holding the paper it expressly reserved its rights against all the parties. Even sureties are not released if the renewal is made with their assent, or if the right of recourse against them is reserved. Meredith v. Dibrell, 127 Tenn., 390, 155 S. W., 163; Hunter v. Matt Stewart Company, 141 Tenn., 507, 516, 213 S. W., 918. We hold that Parham was the agent of these stockholders, and assented to the renewals and extension of time with knowledge that recourse against them was reserved, and they are affected with knowledge of their agent.

For the same reasons we think there is nothing in the contention that the agreement to extend time of payment and not to issue execution on the decree against the other cross-defendants upon payment of part of the decree and interest, operated as a release of appellant. In the first place, the parties agreed of record that this decree should not affect the rights of the parties, and in the second place, the Bank reserved its right of recourse against these parties.

The next insistence is that the original instrument signed by these parties did not provide for interest, attorney's fees and cost of collection, and that when the Bank took the notes providing for such, it changed the obligation of that paper, which contituted an alteration or change of the obligation so as to release complainant. We think there is nothing in this contention as that instrument was a guaranty of the indebtedness of the corporation. "Indebtedness" is a word of large meaning and is used to denote every kind of pecuniary obligation originating in the contract. We think that "the indebtedness" used in this guaranty means all pecuniary obligations owing by the Grocery Company arising under the contract at the time of the institution of suit to enforce collection up to the $75,000 limit. The principal, interest and attorney's fees constituted the debt of the corporation at the time. The liability of the guarantors should be measured by that of the principal obligor.

The solicitor's fees were a constituent part of the indebtedness and not a distinct obligation or penalty. See Merrimon v. Parkey, 136 Tenn., 645-654, 191 S. W., 327.

It results that all the assignments must be overruled and the decree of the Chancellor affirmed.

A decree will be entered in this court in favor of said Bank and against Mrs. Villines and the surety on her appeal bond for $2266.-50, together with interest thereon from July 3, 1925, and $150 solicitor's fees allowed by the Chancellor. An additional fee of $100 will be allowed the Bank solicitor for his services in this court, and a decree will be entered accordingly. For all of which execution may issue.

Faw, P. J., and DeWitt, J., concur.