**MEMPHIS SHERATON CORPORATION,**
**Plaintiff-Appellee, Cross-Appellant,**

**v.**

**Billy J. KIRKLEY and Robert McCullough, Defendants-Appellants, Cross-Appellees.**

**Nos. 80–1293, 80–1294.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 22, 1980.

Decided Jan. 13, 1981.

John W. Slater, Jr., Winchester, Marshall, Huggins, Charlton, Leake, Brown & Slater, Memphis, Tenn., for defendants-appellants.

Charles M. Crump and Robert L. Dinkelspiel, Apperson, Crump, Duzane & Maxwell, Memphis, Tenn., for plaintiff-appellee.

Before ENGEL and KENNEDY, Circuit Judges, and PECK, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Appellant Memphis Sheraton sued appellees Billy J. Kirkley and Robert McCullough on a guaranty given in connection with the sale of the historic Peabody Hotel in Memphis, Tennessee. Both sides cross-appealed from the judgment of the District Court filed July 5, 1977, which awarded appellant $113,717.00, plus interest and reasonable fees, plus costs and expenses, on summary

judgment. This Court held the judgment of the District Court was not final and appealable for failure to specify the amount of interest due on the guaranty. *See Memphis Sheraton Corp. v. Kirkley*, 614 F.2d 131 (6th Cir. 1980). After remand, the District Court, in an opinion filed March 21, 1980, determined the amount of interest due and reasonable attorneys fees and costs to be awarded. The parties again present their arguments on appeal.

Memphis Sheraton sold the historic Peabody Hotel in Memphis, Tennessee to Southern Peabody, Inc. for $1,200,000. Of this, $100,000 was paid in cash and the balance was represented by a promissory note secured by a deed of trust, by a security agreement, and by a guaranty of the first $200,000 of the indebtedness signed by appellees. The note included certain other costs and expenses and totaled $1,148,450. Southern Peabody made principal payments on the note totaling $86,283, then filed a voluntary petition in bankruptcy and was adjudicated a bankrupt March 31, 1975.

On July 1, 1975, appellant secretly sold the promissory note with an outstanding principal balance of $1,071,940.87 to Raymond M. Shainberg (private trustee for the actual buyer) for $590,000. Under this contract, it agreed to pay the 1974 real estate taxes and a pro rata share of the 1975 taxes. Memphis Sheraton expressly reserved any rights it had against the guarantors.

The bankruptcy court authorized foreclosure proceedings and the Peabody Hotel was sold at auction to Shainberg for $400,000 for the real estate and $140,000 for the personal property.

The District Court held that the sale of the note did not release appellees from their liability on the guaranty. It awarded appellant $113,717 plus interest on the balance of the note and on the guaranty and reasonable attorneys fees plus costs and expenses incurred in enforcing the liability under the guaranty. Though appellees guaranteed only the first $200,000, the court held the parties could not have intended that the proceeds of foreclosure proceedings be applied to credit the appellees' guaranty of $200,000. It disallowed appellant's expenses for back taxes, title search, guard service, attorneys fees to foreclose, and other expenses of maintaining the property as the deed of trust provided that these were to be paid from the foreclosure proceeds and appellees had the right to expect that they would not be liable for them.

On appeal, appellees raise three issues:

1) does appellant have standing to sue on the guaranty in view of its sale of the note?

2) has the guaranty been satisfied by the application of the proceeds of the foreclosure to the indebtedness?

3) did the District Court correctly calculate the interest due and the amount of the attorneys fees?

Appellant raises only one issue:

1) Does it have the right to collect for back taxes and other expenses incurred maintaining the collateral?

## APPELLANT'S STANDING TO SUE

The guarantors, jointly and severally, guaranteed

"the full and prompt payment to 'Sheraton' when due (whether by virtue of a declaration of acceleration or otherwise) and at all times thereafter, of the first Two Hundred Thousand Dollars ($200,000) of principal of said note, together with all accrued interest on said note and all expenses, legal and/or otherwise (including Court costs and reasonable attorneys fees) incurred by Sheraton in collecting or endeavoring to collect from the Buyer or the Guarantors the amount guaranteed hereby, or any part thereof, in protecting any collateral, or in enforcing this Guaranty."

The guaranty further provided that the obligations of the guarantors would automatically terminate at such time as the principal balance of the promissory note was reduced by two hundred thousand dollars ($200,000), all accrued interest had been paid in full, and no terms of the note were in default.

The appellees-guarantors agreed that their obligations were absolute and would not be impaired, affected or diminished by any extension or forbearance given to the buyer, any modification or change in the promissory note or deed of trust, or release of the buyer. Sheraton was not required to exhaust remedies under the deed of trust before enforcing the guaranty and the guaranty could be enforced "independently of, and notwithstanding the fact that, Sheraton shall have recourse to, or be pursuing any other security or remedy for payment of the Promissory Note." The guaranty provided that Tennessee law would apply.

The purchase agreement for the sale of the promissory note provided that appellant would pay back taxes, a pro rata share of 1975 taxes, and would maintain security, insurance and other risks prior to closing. The buyer agreed to foreclose on the property and to maintain security, insurance, and other risks from date of closing to date of foreclosure. Appellant agreed it would not receive any proceeds from the foreclosure, but "[i]t is understood that Seller [appellant] intends to proceed to enforce its rights, if any, under the terms of Exhibit 2 [the guaranty]." The parties agreed appellant would receive all proceeds recovered under the guaranty.

Appellant clearly did not intend to relinquish any rights under the guaranty. Appellees argue, that whatever Memphis Sheraton's intent, it cannot sever the note from the guaranty and, having sold the note, it has no recourse under the guaranty.

Under Tennessee law, a guaranty is an independent collateral promise by one to answer for a debt in default of a third. *Villines v. Parham-Linsey Grocery Co.*, 6 Tenn.App. 254 (1927), *cert. denied by Tenn. S.Ct.* (1928). Thus absent an express provision, a guaranty was not transferable to the buyer of a note as the buyer was not a party to the contract. *Turley v. Hodge*, 22 Tenn. (3 Humph.) 73 (1842).

■ A guaranty is a liability on the indebtedness, not on the note. The note is mere evidence of the indebtedness. *See Villines, supra.* Guarantors are not re-

leased by a renewal of a note by the seller as acceptance of a new note does not cancel the underlying indebtedness. *See First National Bank, Hope, Arkansas v. Foster*, 60 Tenn.App. 711, 717–18, 451 S.W.2d 434 (1968), *cert. denied by Tenn.S.Ct.* (1970); *Villines, supra.* In one case, guarantors were held liable on their guaranty even though the principal obligor had been reorganized into a new corporation. *See Chapman Drug Co. v. Brewer*, 390 F.Supp. 264 (E.D.Tenn.1974). Guarantors were also held liable on their guaranty even though the creditor's rights against the principal were extinguished. *See Hickory Springs Manufacturing Co., Inc. v. Evans*, 541 S.W.2d 97 (Tenn.1976).

For the proposition that the sale of a note carries with it the security for the note, defendants cite *Clark v. Jones*, 93 Tenn. 639, 641, 27 S.W. 1009 (1894), and *Cleveland v. Martin*, 39 Tenn. (2 Head) 128, 130–31 (1858). However, neither of those cases involved a guaranty. *Clark* held the assignee of a note enjoyed the benefit of a lien created by the deed of trust even though the security had not been formally transferred. *Cleveland* held that a note secured by the property the note was used to purchase carried with it the security interest. Appellant's actions are consistent with these cases as it did transfer the deed of trust and the security interest in the property along with the promissory note.

■ Guarantees on a commercial contract are special contracts in Tennessee law. In order to facilitate the extension of credit, Tennessee does not favor guarantors and will construe a guaranty against the guarantor as strongly as the language will permit. *See Chapman, supra*, 390 F.Supp. at 266; *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn.1975); *Nashville Electric Supply Co. v. Kay Industries, Inc.*, 533 S.W.2d 306, 310 (Tenn.App.1975); *First National Bank, supra*, 60 Tenn.App. at 717, 451 S.W.2d 434; *W. R. Grace & Co. v. Taylor*, 55 Tenn.App. 227, 239, 398 S.W.2d 81 (1966); *Hassell-Hughes Lumber Co. v. Jackson*, 33 Tenn.App. 477, 486, 232 S.W.2d 325 (1949). Rights under a guaranty may

exist even when the principal debt is discharged. In *Hickory Springs, supra,* the plaintiff sold materials to Star-Line and such indebtedness was guaranteed up to $10,000 by the defendant. Defendant sold his stock in Star-Line to Jarmagian (at that time, he was the sole shareholder). Star-Line owed plaintiff around $35,000. To avoid bankruptcy of Star-Line, plaintiff agreed to accept half that amount in full payment and satisfaction on the debt. Plaintiff then sued defendant on his guaranty. Defendant argued that the release of the principal released him too. The court construed the guaranty as intending that defendant remain liable notwithstanding any settlement or compromise.

The instant case is indistinguishable from *Hickory Springs.* There, the guarantors were liable on the remaining indebtedness even though plaintiff could no longer collect on his note, having accepted part payment as payment in full. Here, appellant cannot collect on the promissory note as it has sold it, but the sale of the promissory note left some indebtedness still owing to appellant as it expressly reserved any rights under the guaranty (presumably this was reflected in the sale price of the note).

The District Court's decision that appellant may continue to assert its rights, if any exist under the guaranty, is affirmed.

## CONSTRUCTION OF THE GUARANTY

■ Appellees contend they are not liable on the guaranty as they guaranteed only the first $200,000 of indebtedness and the proceeds from foreclosure reduced the indebtedness by more than $200,000. Appellant argues that the foreclosure proceeds should not be used to reduce the principal when determining appellees' liability under the guaranty. Appellees argue that appellant's theory would make them pay the last, not the first, $200,000 of indebtedness. Their guaranty, however, also states that they guarantee the first $200,000 independently of appellant pursuing any action under the deed of trust or the security agreement.

\* All rates of interest in this opinion are annual rates.

The Eastern District of Tennessee was faced with a similar problem in *Commercial Credit Development Corp. v. Scottish Inns of America, Inc.,* 69 F.R.D. 110 (E.D.Tenn. 1975). There, the guaranty stated the guarantors would not be liable if the principal was reduced to $1,900,000. The guarantors argued they were released because the foreclosure reduced the principal to $1,700,000. The court held the parties clearly intended the guarantor to guarantee at least $500,000 of the $2,400,000 loan. If the reduction in principal by foreclosure was viewed as completely relieving the guarantor of its obligation, there would have been no guaranty at all.

The same is true here. If foreclosure proceeds were to be applied to reduce the liability of the guarantors, the language that the guarantors would be liable despite appellant seeking foreclosure would have been superfluous and there would have been no guaranty at all. Given the strong construction against the guarantor under the law of Tennessee, this Court affirms the District Court holding that appellees are liable for their guaranteed amount of $200,000 less the $86,283 paid on the principal before foreclosure.

## INTEREST AND ATTORNEYS FEES

The District Court calculated the interest and fees in the following manner:

| | |
|---|---|
| Principal amount ($200,000 guaranteed less $86,283 already paid) | $113,717.00 |
| Stipulated interest from date due until date note was sold (February 10, 1975 through July 9, 1975) on outstanding balance on note of $1,062,167 at 10% as provided for in the note \* | $ 43,359.69 |
| Court awarded interest on amount due on guaranty ($113,717) from date note was sold until date of second judgment (July 10, 1975 through March 24, 1980) at 10% | $ 53,470.56 |
| Attorneys fees | $ 30,000.00 |
| Costs | $ 1,615.81 |
| | $242,163.06 |

The court also awarded interest on the judgment, dated March 24, 1980, at 8%.

Appellees argue the District Court erred in calculating the interest due on the guaranty at 10%. They argue that $30,000 should not be awarded in attorneys fees as that sum does not reflect the actual expense of the attorneys to appellants.

■ The guaranty included "all accrued interest on said note" in addition to $200,000 of indebtedness. The note provided for interest at 10% per year. Thus, the guarantors were liable for interest accruing to the guarantee at the rate of 10%. But once the note was sold, interest no longer accrued to the appellant on the note. One must have legal title to a note to sue upon it. *See Cardwell v. Tennison,* 29 Tenn. (10 Humph.) 446, 447 (1850). Interest may still be accruing on the underlying indebtedness owed by the obligor to the present owner of the note, but a guaranty is a collateral instrument from the note, *see Villines, supra,* 6 Tenn.App. at 261, and the guarantor's obligation runs only to the guarantee. *See Turley, supra.* Thus, appellees are not liable to appellant for interest due on the note after the date the note was sold.

■ The District Court held appellees were liable for interest due on the guaranty after that date. The guaranty does not itself state any interest rate for the amount due under the guaranty. Tennessee law, at the time of this transaction, provided that "[a]ll bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned." Tenn.Code Annot. § 47–14–107 (1964). A liquidated debt which does not specify a rate of interest bears interest at the legal rate. *See Provident Life and Accident Insurance Co. v. Few,* 560 S.W.2d 407, 409 (Tenn.1978); *Vaughn v. American Heritage Life Insurance Co.,* 573 S.W.2d 165, 168 (Tenn.App.), *cert. denied by Tenn.S.Ct.* (1978). The legal rate at the time the guaranty was signed was 6%. *See* Tenn.Code Annot. § 47–14–104 (1964). Tennessee amended its law in 1979 to provide that pre-judgment interest may be awarded by the District Court at

any rate not greater than 10%, *see* Tenn. Code Annot. § 47–14–123 (1979), and former § 47–14–107 was repealed. However, section 27 of Tenn.Pub.Acts of 1979, ch. 203, provided that this section was to become effective midnight April 30, 1979 and that "transactions entered into before midnight on April 30, 1979, may be completed in accordance with prior law." *See* Compiler's Notes to Tenn.Code Annot. § 47–14–102 (1979). Thus, the District Court erred in awarding interest on the guaranty at 10% from the date of sale to the date of judgment. Interest should have been awarded on the amount due under the guaranty at the rate of 6% for that time period.

■ The District Court held that appellant was entitled to interest on the judgment at the rate of 8%. Since that was the law before the 1979 amendment, *see* Tenn. Code Annot. § 47–14–101 (1976); *Provident Life, supra,* and indeed still is the law, *see* Tenn.Code Annot. § 47–14–121 (1979), that award must be affirmed. Appellant raises some question about which opinion should be regarded as the date of final judgment— the first opinion rendered in July 1977 or the second opinion rendered in March 1980. This Court held the first opinion was not a final and appealable judgment. The district Court correctly used the date of its second judgment, given the prior law of Tennessee. *See Montgomery Ward & Co. v. Morris,* 273 F.2d 452, 454 (6th Cir. 1960).

■ The guaranty also included "Court costs and reasonable attorney fees." The guaranty did not include "actual attorneys fees." The District Court found that $30,000 was a reasonable fee for all past and future efforts to collect on the guaranty. Findings of fact by the trial court shall not be set aside unless clearly erroneous. *See* Rule 52(a), Fed.R.Civ.Pro. Since there has been no showing this finding is clearly erroneous, this Court must affirm the award of the attorneys fees.

### PAYMENT OF TAXES AND MAINTENANCE EXPENSES

■ The deed of trust in the printed form provides the owner of any part of the

indebtedness may pay the taxes, maintain the insurance, and protect the property and such payments shall be treated as expenses of administering the trust. It further provides:

"The proceeds of any sale shall be applied as follows: first, to the payment of the expenses of making, maintaining and executing the trust, the protection of the property, including the expense of any litigation and attorneys fees, and the usual commissions to the Trustee; second, to the payment of the indebtedness herein secured . . . ."

The typed Additional Covenants provide that if the buyer fails to pay insurance premiums or taxes, the holder of the indebtedness may pay such amounts and add them to the principal sum due under the deed of trust. In the event of a conflict between the printed deed of trust and the Additional Covenants, the latter should control.

Under the clear language of the deed of trust, the expenses for the title search and other maintenance expenses were to be paid out of the proceeds from the foreclosure, and not as expenses guaranteed by the guaranty. However, the payment of real estate taxes, which was the buyer's obligation, could be paid by the seller and added to the principal sum due. Thus, these taxes should increase the principal outstanding. But that does not change the award against appellees as they only guaranteed the first $200,000 of the principal sum due, less the amount by which the principal had been reduced prior to foreclosure. We affirm the District Court's disallowance of back taxes and other expenses incurred maintaining the estate.

The judgment of the District Court is modified to award the following:

| | |
|---|---|
| Principal | $113,717.00 |
| Stipulated interest on note (10% of $1,062,167.00 from February 10, 1975 until July 9, 1975) | $ 43,359.69 |

| | |
|---|---|
| Interest on guaranty (6% of $113,717.00 from July 10, 1975 until March 24, 1980) | $ 32,082.34 |
| Attorneys fees | $ 30,000.00 |
| Costs | $ 1,615.81 |
| | $220,774.84 |

Interest shall run on the judgment at 8%. In all other respects, the judgment of the District Court is affirmed.**

IT IS SO ORDERED.

** Note: this Court is using the computations of interest as provided by the parties and the District Court below. If there is a mathematical error, the parties may stipulate to the correct figure using the interest rates and time periods that this Court determined were applicable.