902 F.2d 33
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
FIRST HERITAGE NATIONAL BANK, Plaintiff-Appellee,
v.
Luke KEITH and Margaret Keith, Defendants-Appellants.
 No. 89-5728.
 United States Court of Appeals, Sixth Circuit.
 April 24, 1990.
 
 Before RALPH B. GUY, Jr., and BOGGS, Circuit Judges; and AVERN COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Luke and Margaret Keith appeal the summary judgment awarding First Heritage National Bank (the Bank) $75,000 on a continuing loan guaranty. The Bank operates in Loudon, Tennessee, and the Keiths live in Hilton Head, South Carolina. We have jurisdiction under 28 U.S.C. Sec. 1332. The district court held the Keiths liable on the guaranty and rejected their affirmative defense of commercial unreasonableness in the sale of foreclosed security for the loan. We affirm the liability judgment, but remand the case to permit the Keiths to conduct further discovery on the issue of commercial unreasonableness.
 
 
 2
 * The controversy arose out of the Keiths' guaranteeing a loan from the Bank to the Double S Corporation (the Corporation) of Knoxville, Tennessee, which operates the Old South Barbeque and Steak Restaurant in Knoxville. On July 8, 1986, the Bank issued a promissory note to the Corporation in the amount of $300,000. The Bank took a security interest in the restaurant property and certain corporate securities and obtained personal guarantees or collateral pledge agreements from various corporate officers. On June 25, 1986, the Keiths signed a continuing guaranty for $75,000. Some months later, the Corporation defaulted on its obligation, which then amounted to $315,525.
 
 
 3
 Under the terms of the loan agreement between the Bank and the Corporation, the Keiths were to be released from their guaranty when the Corporation's debt was paid down to $200,000. The following language in the loan agreement is at the center of this dispute:
 
 
 4
 Bank agrees that when the indebtedness covered by this agreement has been reduced to $200,000, the guarantee of Luke Keith and wife shall be released.
 
 
 5
 The stricken language, appearing in paragraph 6, was initialled by the president of the Bank and the president of the Corporation. The Keiths argue that because this language was stricken, they were released from their guaranty as soon as the Corporation's debt fell below $200,000, by whatever means. They argue that the deletion was designed to clarify that there was to be no condition on the method or source of debt reduction.
 
 
 6
 About 18 months after the default, during which period the Bank tried unsuccessfully to negotiate a cure for the default with the principals and the guarantors, the Bank foreclosed on the Corporation's property and sold it for $400,000. Some of these proceeds were applied toward back taxes, lease payments, and utilities payments. When the balance was applied toward the Corporation's obligation, its indebtedness was reduced to $102,483.19. Only when the foreclosure proceeds were applied toward the indebtedness did the total debt drop below $200,000.
 
 
 7
 The district court interpreted the deleted language in the agreement to mean that the Bank could refuse to release the Keiths from their guaranty if the Corporation itself did not stay current with its payments. In the absence of that language, the court read the loan agreement to mean that the Bank could not refuse to release the Keiths from their guaranty when the total indebtedness fell below $200,000, so long as some party acted to cure the Corporation's default. The court held that the Bank would not have to release the Keiths if the only way by which the indebtedness was reduced below $200,000 was through the application of the foreclosure proceeds.
 
 
 8
 The Keiths initially denied both their liability under the guaranty and the amount of their obligation. On cross motions for summary judgment on the issue of liability only, the district court issued an order granting the Bank's motion, denying the Keith's motion, and awarding the Bank $75,000.[2] On appeal, the Keiths challenge the district court's interpretation of the loan agreement and the commercial reasonableness of the sale of the Corporation's property.
 
 II
 
 9
 * The Keiths' first argument is that there is a genuine issue of material fact concerning the intentions of the Keiths when executing the guaranty and of the president of the Bank and the president of the Corporation when executing the loan agreement. The Keiths maintain that their belief at the time they signed the guaranty was that, since the loan agreement placed no conditions on the means by which the indebtedness might be reduced, they would be released from their obligation if the Bank applied foreclosure proceeds to the debt. The Keiths argue that the district court erred by not taking into account their subjective belief about the meaning of the loan agreement.
 
 
 10
 The Keiths further contend that theirs is a case of special circumstances. The loan agreement to which they were guarantors was hand-tailored to reflect the particular needs of the borrower, as reflected by the striking of the proviso in paragraph 6. Their explanation of the special circumstances surrounding the amending of the loan agreement puts in dispute certain facts that a jury should consider.
 
 
 11
 The Keiths concede that there is no dispute over the construction of paragraph 6 as originally drafted. The dispute concerns the intentions of the parties who changed the loan agreement. The stricken language was initialed by James C. Brewer, the Bank president, and Larry B. Hodge, the president of the borrower Corporation. Brewer and Hodge, who were the signatories to the loan agreement,[3] submitted affidavits explaining their intentions when striking the language in paragraph 6. Hodge swore in his affidavit that:
 
 
 12
 It is my understanding, and I believe it was the understanding of all parties at the time the Loan Agreement was entered into, that once the indebtedness was reduced to Two Hundred Thousand Dollars ($200,000.00), by any means, including sale of the collateral, the guaranty of the Keiths would be released. It was my understanding that that was why the language in Paragraph 6 of the Loan Agreement was struck through and initialed by the parties.
 
 
 13
 Brewer gave contrary testimony in his affidavit, stating that he "did not realize at the time of closing that the language had been struck through or deleted, and it was not the intention of First Heritage National Bank to delete the requirement."
 
 
 14
 In its amended order, the district court stated that the "Court is not interested in any affidavit about the intention of the parties. It ruled on the written contracts at issue (the loan agreement and the Keith's [sic] guaranty) on the basis of their language and general law concerning guaranties." The Keiths contend that Bank president Hodge's intentions and their understanding of the agreement should have been considered by the court. They argue that the court should not have granted summary judgment when the parties' intentions were so clearly in dispute.
 
 
 15
 We find no merit in the Keiths' argument. The parties presented no disputed facts to the district court. The Keiths do not dispute that they voluntarily executed the continuing guaranty in the amount of $75,000. They executed the guaranty in South Carolina before the loan agreement was signed. The Keiths do not suggest that any limits or conditions were placed on the guaranty, which is the only document to which they were a party. They do not object to the terms of the guaranty.
 
 
 16
 We hold that the terms of the loan agreement and the continuing guaranty are controlling. The district court correctly ruled that the terms of the guaranty that the Keiths executed are absolute and unconditional. The Keiths' guaranty contains no terms that allow for their release when foreclosure proceeds are applied to the debt. There was no genuine issue of material fact. The terms of the documents are clear and will not support the interpretation urged by the Keiths.
 
 
 17
 The district court correctly relied on our previous decision in Memphis Sheraton Corporation v. Kirkley, 640 F.2d 14, 18 (6th Cir.1981). In Memphis Sheraton, we held that a guaranty is not discharged by a reduction of the debt through the application of foreclosure proceeds. We reasoned that if "the reduction in principal by foreclosure was viewed as completely relieving the guarantor of its obligation, there would have been no guaranty at all." Ibid.
 
 
 18
 The dispute before us is identical, for all intents and purposes, to that in Memphis Sheraton. In that case, the guarantors were to be released from their obligations only if the debt was reduced before the borrower went into default:
 
 
 19
 The guaranty further provided that the obligations of the guarantors would automatically terminate at such time as the principal balance of the promissory note was reduced by two hundred thousand dollars ($200,000), all accrued interest had been paid in full, and no terms of the note were in default.
 
 
 20
 Id. at 16 (emphasis added). The Keiths attempt to distinguish Memphis Sheraton on the ground that the phrase "and no terms of the note were in default" was not stricken, in contrast to the corresponding language which was stricken from the loan agreement they guaranteed.
 
 
 21
 We are not persuaded that this is a distinction that makes a difference. In both cases, a guarantor executed a guaranty; the borrower defaulted and the secured lender foreclosed; and the lender sought to enforce the guaranty. There is no language in the guaranty to which the Keiths were a party that changes the guaranty's unconditional nature. The stricken language that the Keiths attempt to use to distinguish this case from Memphis Sheraton was removed not from the guaranty but from the loan agreement, to which the Keiths were not a party. The foreclosure was a separate event from the guaranteeing of the debt. The guaranty itself stated:
 
 
 22
 [the Bank] shall be free to apply all payments and the proceeds of all collateral, if any, in whatever manner [the Bank], in [its] sole discretion may deem to [its] best interests without lessening Guarantor's liability.
 
 
 23
 The Keiths were under a contractual obligation to the Bank that was not affected by the Bank's independent efforts to recover foreclosure proceeds. They may not avoid their liability to the Bank by appealing to language in the loan agreement and ignoring the unconditional terms of their guaranty.
 
 B
 
 24
 The Keiths' second contention is that the district court erred by precluding discovery on the issue of whether the sale of the collateral was performed in a commercially reasonable way. After the district court granted the Bank's motion for summary judgment on the liability issue, the Keiths moved the court to permit additional discovery on the reasonableness of the Bank's conduct in liquidating the Corporation's collateral. The Keiths had not engaged in such discovery previously, anticipating that a ruling in its favor on the liability issue would moot the commercial reasonableness claim. The district court denied the Keiths' motion, noting that the Keiths had presented no evidence of commercial unreasonableness while the court was considering the cross-motions for summary judgment and that the guaranty includes a waiver of any rights to attack the disposition of the collateral. We hold that the district court erred and remand to permit discovery on the issue of the commercial reasonableness of the foreclosure sale.
 
 
 25
 The Keiths contend that under Article 9 of the Uniform Commercial Code (the UCC), Tenn.Code Ann. Sec. 47-9-503, the Bank did not take possession and dispose of the collateral in a reasonable way. The Keiths also contend that the Bank violated Tenn.Code Ann. Sec. 47-9-504(3), which requires notification of the sale to be given to the debtor. Because no discovery was conducted on this issue, the record is devoid of any evidence to substantiate the Keiths' claims. The record does indicate that the Corporation's property was sold at public auction. In Tennessee, however, the sale of collateral at a public auction is not conclusive proof of commercial reasonableness. See Mallincoat v. Volunteer Finance and Loan Corp., 57 Tenn.App. 106, 415 S.W.2d 347, 351 (Ct.App.1966).
 
 
 26
 The fact that the Keiths consented, by the express terms of the guaranty,[4] to waive their right to challenge the disposition of the collateral also is not dispositive of this issue. The UCC explicitly protects debtors, but does not explicitly protect guarantors, from such waiver clauses by providing that debtors' defenses of lack of notice of the foreclosure sale and lack of commercial reasonableness cannot be waived. See Tenn.Code Ann. Sec. 47-9-501(3). In order to avoid placing guarantors in worse positions than their debtors, courts have extended certain debtors' rights to guarantors who become liable after their debtors default. In United States v. Willis, 593 F.2d 247 (6th Cir.1979), we held that, as a matter of federal law, the lack of notice and commercial unreasonableness defenses extend to an unconditional guarantor after the debtor has defaulted. Id. at 255-56. Although we can find no Tennessee cases stating definitively that guarantors are entitled to step into the shoes of debtors and raise the defense of commercial unreasonableness, we believe that the Tennessee Supreme Court would adopt this rule. See Commerce Union Bank v. Burger-in-a-Pouch, Inc., 657 S.W.2d 88, 92-3 (Tenn.1983); Solomon v. First American National Bank, 774 S.W.2d 935, 942 (Tenn.Ct.App.1989). See also Note, Guarantor Liability in Tennessee: Past, Present & Future, 15 Mem.St.U.L.Rev. 601, 616-20 (noting the judicial extension of debtors' rights under the UCC to guarantors). The trend in state court decisions is to recognize unconditional guarantors as UCC debtors entitled to the nonwaivable defenses. See, e.g., McEntire v. Indiana National Bank, 471 N.E.2d 1216 (Ind.Ct.App.1984). To the extent that Union Planters National Bank of Memphis v. Markowitz, 468 F.Supp. 529, 535 (W.D.Tenn.1979), implies that the commercial unreasonableness defense is not available to a guarantor after the primary debtor had defaulted, it is hereby rejected.
 
 
 27
 The commercial law therefore affords the Keiths an opportunity to challenge the reasonableness of the Bank's disposition of the collateral. The protections of Tenn.Code Ann. Sec. 47-9-501(3) render the relevant waiver clauses in the guaranty void. The district court thus erred by denying the Keiths an opportunity to conduct discovery on the issue of commercial reasonableness.
 
 
 28
 We affirm the district court's judgment as to the Keiths' liability on the guaranty. The Keiths are entitled, however, to assert an affirmative defense of commercial unreasonableness in an attempt to mitigate their $75,000 adverse judgment. This case is therefore remanded for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 In its original April 4, 1989 order, the district court awarded the Bank $75,000 plus costs and attorney fees. After the Keiths filed a motion to alter or amend the judgment and the Bank admitted that the continuing guaranty did not allow for an award of attorney fees, the district court issued an order on April 26, 1989 modifying its previous order by deleting the award of attorney fees
 
 
 [3]
 The Keiths themselves were not present at the closing or during the negotiations of the loan agreement when the language in paragraph 6 was stricken
 
 
 [4]
 The guaranty signed by the Keiths stated that "[e]very kind of notice ... which might ... be used or raised to release or diminish this guaranty in any way ... is hereby waived" and that "[n]o delay ... in realizing or failing to realize upon any collateral shall diminish the liability of the Guarantor hereunder."